UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

No. 26-2265

**Children of the Court**, *a non-profit corporation*, and **Judiciocracy LLC**,

*Plaintiff-Appellants*,

v.

**Attorney Registration and Disciplinary Commission**, **Lea S. Gutierrez**, and **Tammy Evans**, *in their official capacities*,

*Defendant-Appellees*.

| | |
|---|---|
| Appeal No.: | 26-2265 |
| Dist. Ct.: | N.D. Ill. – Eastern Div. |
| Civil Case: | 1:25-cv-03387-AMP-GAF |
| Dist. Judge: | Hon. April M. Perry |

**Initial Brief and Required Short Appendix of Plaintiff-Appellants Children of the Court** and **Judiciocracy LLC**

Adam Florek
IARDC No: 6320615
N.D. Ill. Gen. Bar No.: 6320615
Florek Law, LLC
3843C E Tremont Ave.
Bronx, NY 10465
Tel: +1 (929) 229-2268
Email: aflorek@florekllc.com

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 26-2265

Short Caption: Children of the Court and Judiciocracy LLC v. ARDC, Gutierrez, and Evans

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐ **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1) The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Children of the Court

Judiciocracy LLC

(2) The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Florek Law, LLC; Antonio Valiente-Rivera

(3) If the party, amicus or intervenor is a corporation:

i) Identify all its parent corporations, if any; and

Childen of the Court-503(c)(3) Non-Profit; Judiciocracy Members:Brian Timpone, Edward "Coach" Weinhaus

ii) list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

n/a

(4) Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

n/a

(5) Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

n/a

---

Attorney's Signature: [signature] Date: June 16, 2026

Attorney's Printed Name: Adam Florek

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d). **Yes** ☑ **No** ☐

Address: 552 Seventh Ave., Suite 601

New York, New York 10018

Phone Number: 929 229-2268 Fax Number:

E-Mail Address: aflorek@florekllc.com; service@florekllc.com

# TABLE OF CONTENTS


Table of Contents ..... 3

Table of Authorities ..... 4

Jurisdictional Statement ..... 6

Statement of Issue ..... 7

Statement of the Case ..... 8

A. The Organizations At Issue ..... 8

B. The Organization's Speech and Ensuing Investigation ..... 10

C. The District Court's Proceedings, Order, and Judgment ..... 12

Summary of Argument ..... 15

ARGUMENT ..... 17

A. Standard of Review ..... 17

B. Plaintiff-Appellants Have Direct Standing to Pursue Their First Amendment Claims Because They Suffered a Direct and Palpable Injury, Traceable to Defendant-Appellees, And Redressable by the Court ..... 18

1. Plaintiff-Appellants suffered a legally cognizable injury – the abrogation of their First Amendment Right to Free Speech ..... 19

2. Plaintiff-Appellants' Injuries Can Be Redressed By Declaratory And Injunctive Relief Finding Plaintiff-Appellants' Speech Is Its Own And Not Weinhaus's ..... 24

C. Alternatively, Plaintiff-Appellants have Third-Party Standing Under Powers v. Ohio ..... 27

D. Abstention Is Inappropriate Where, As Here, It Does Not Fit Within the Three Narrow Categories of State Proceedings Articulated in Sprint and Plaintiff-Appellants Are Not Parties to the State Court Proceeding ..... 29

1. The Supreme Court Has Explicitly Instructed That the Younger Abstention Doctrine Is Confined to Three Narrowly Defined Classes Of "Exceptional" Cases, None of Which Are Applicable Here ..... 29

2. The Middlesex Factors Cannot Be Satisfied Because Plaintiff-Appellants Have No Remedy at the State Forum ..... 32

Conclusion ..... 35

Certificate of Compliance with Fed. R. App. Pro. 32(a)(7) and 32(g) and Circuit Rule 32(c) ..... 36

Certificate of Service ..... 37

Circuit Rule 30(d) Statement ..... 38

## TABLE OF AUTHORITIES

**Cases**

Allen v. Wright, 468 U.S. 737 (1984) ... 24
Brotherhood of Railroad Trainmen v. Virginia, 377 U.S. 1 (1964) ... 21
Caplin & Drysdale, Chartered v. United States, 491 U.S. 617 (1989) ... 27
Cohens v. Virginia, 6 Wheat. 264 (1821) ... 29
Crawford v. Marion Cnty. Election Bd., 472 F.3d 949 (7th Cir. 2007), aff'd, 553 U.S. 181 (2008) ... 26
Crenshaw v. Supreme Court of Indiana, 170 F.3d 728 (7th Cir. 1999) ... 18
Duke Power Co. v. Carolina Envt'l. Study Group, Inc., 438 U.S. 59 (1978) ... 24
Forty One News, Inc. v. Cty. of Lake, 491 F.3d 662 (7th Cir. 2007) ... 18
Garden State Bar Ass'n v. Middlesex Cnty. Ethics Comm., 687 F.2d 801 (3d Cir. 1982) ... 16, 33
Garrison v. Louisiana, 379 U.S. 64 (1964) ... 26
In re Primus, 436 U.S. 412 (1978) ... 20
In re Recalled Abbott Infant Formula Prods. Liab. Litig., 97 F.4th 525 (7th Cir. 2024) ... 20
J.B. v. Woodard, 997 F.3d 714 (7th Cir. 2021) ... 30
Lac Du Flambeau Flambeau Band v. Norton, 422 F.3d 490 (7th Cir. 2005) ... 24, 25
Lewert v. P.F. Chang's China Bistro, Inc., 819 F.3d 963 (7th Cir. 2016) ... 17
Linda R. S. v. Richard D., 410 U.S. 614 (1973) ... 22, 23
Lujan v. Defs. of Wildlife, 504 U.S. 555 (1992) ... 18
NAACP v. Button, 371 U.S. 415 (1963) ... 15, 20
New Jersey-Philadelphia Presbytery of the Bible Presbyterian Church v. New Jersey State Board of Higher Education, 654 F.2d 868 (3d Cir. 1981) ... 33
New Orleans Public Service, 491 U.S. 350 (1989) ... 30, 31
Powers v. Ohio, 499 U.S. 400 (1991) ... 27
SKS & Associates v. Dart, 619 F.3d 674 (7th Cir. 2010) ... 29
Spokeo, Inc. v. Robins, 578 U.S. 330 (2016) ... 15, 18
Sprint Communications, Inc. v. Jacobs, 571 U.S. 69 (2013) ... passim
Steffel v. Thompson, 415 U.S. 452 (1974) ... 26, 33
United Mine Workers v. Ill. State Bar Ass'n, 389 U.S. 217 (1967) ... 15, 21, 22
Warth v. Seldin, 422 U.S. 490 (1975) ... 18
Wilton v. Seven Falls Co., 515 U.S. 277 (1995) ... 26
Younger v. Harris, 401 U.S. 37 (1971) ... *passim*

**Statutes**

28 U.S.C. § 1291 .... 6
28 U.S.C. § 1331 .... 6
28 U.S.C. § 1343 .... 6
28 U.S.C. § 2201 .... 26
42 U.S.C. § 1983 .... 6

**Rules**

Fed. R. Civ. P. 65(d) .... 26
Ill. R. Prof'l Conduct 8.2(a) .... 15, 24
Ill. R. Prof'l Conduct 8.4(a) .... 12, 24
Ill. R. Prof'l Conduct 8.4(c) .... 15, 24

## JURISDICTIONAL STATEMENT

This appeal arises from a civil action brought in the Northern District of Illinois seeking redress for violation of Plaintiff-Appellants' Constitutionally protected First Amendment Rights. The District Court had jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343 because the suit was brought pursuant to a federal statute 42 U.S.C. § 1983.

The United States Court of Appeals for the Seventh Circuit has jurisdiction under 28 U.S.C. § 1291 because this is an appeal from a final decision of the District Court and is seeking to reverse the Judgment of the same. The United States Court of Appeals for the Seventh Circuit has jurisdiction under 28 U.S.C. § 1291 because this is an appeal from a final decision of the District Court and is seeking to reverse the Judgment of the same. The date of entry of the final judgments sought to be reviewed are the District Court's May 15, 2026 Opinion and Order (Dkt. No.: 68), wherein it dismissed Plaintiff-Appellants' Claims, with prejudice, after finding they lacked standing and *advised* that even if there was standing, Abstention is appropriate; and May 15, 2026 Judgment (Dkt. No.: 69). The appeal is from an order and final judgment that adjudicated all of the claims with respect to all parties. No Parties or Claims remain pending in the District Court. Appellants did not file a motion for new trial or alteration of the judgment. The notice of Appeal was timely filed on June 11, 2026.

**STATEMENT OF ISSUE**

1.) Whether private institutions have Article III standing to pursue violations of their First Amendment speech rights resultant from a state attorney-disciplinary agency's prosecution of their officer-director for the organization's speech for the purpose of limiting the private institution's criticism of elected judicial officers.

2.) Whether the district court erred in abstaining from the private institutions' First Amendment claims when the organizations are not permitted to advocate for or vindicate their constitutional rights in the peripheral state attorney-disciplinary agency's proceedings and where their interests and the attorney's interests diverge.

## STATEMENT OF THE CASE

This is an appeal from the District Court's May 15, 2026 Opinion and Order, and contemporaneously entered Judgment, wherein it dismissed Plaintiff-Appellants' First Amended Complaint for lack of standing and advised that Abstention further prohibited the lawsuit. In its May 15, 2026 Opinion and Order, the District Court incorrectly concluded that Plaintiff-Appellants had not and could not suffer an injury (May 15, 2026 Opinion and Order, Dkt. 68, p. 7); that even if there was an injury, the Court could not offer redress (Id., at p. 9); and that Abstention prohibits the Court from intervening because none of the enumerated exemptions apply. (Id., at pp. 12-13) As a result, the District Court has left Plaintiff-Appellants unable to vindicate the violations of the First Amendment speech rights.

### A. The Organizations At Issue

Children of the Court is a Missouri non-profit corporation founded in 2023 by social-entrepreneurship students and their professor – Edward "Coach" Weinhaus -- at the University of California, Los Angeles. (Amended Complaint, Dkt. 59, ¶¶ 1, 16) Its mission is to advocate for judicial reform in domestic-relations courts, particularly by promoting the assignment of parental-rights cases to judges who have themselves been parents or foster parents. (Id. ¶ 19) The organization's funding originates in a settlement agreement approved by Cook County Circuit Judge Thaddeus L. Wilson, which directs that Children of the Court receive $10,000 per year for ten years and which expressly conditions Edward Weinhaus's role as Executive Director on his serving without compensation. (Id. ¶¶ 23–25, 32) Children of the Court is governed

by a four-member board and an operations manager. (Id. ¶ 34) Its activities include letter campaigns, public-facing advocacy, and litigation on behalf of its pledge-signing members. (Id. ¶¶ 35, 101)

Judiciocracy LLC is a Missouri limited liability company that owns and operates several legal-affairs publications, including *ALABnews* and *AbusiveDiscretion* covering attorney and judicial misconduct respectively (Id. ¶¶ 2, 41–42) Judiciocracy publishes approximately ten public-records stories per day, maintains a shared editorial and IT staff, and operates under written editorial standards that include prompt correction of factual errors and an offer of free response to any legal professional named in a story. (Id. ¶¶ 42–45) Judiciocracy is a member of the Coalition Opposing Governmental Secrecy, has obtained a fee waiver from the Cook County Circuit Court in recognition of its records-reporting work, and has been a party to more than twenty separate FOIA related lawsuits. (Id. ¶¶ 46–48)

Weinhaus is an Illinois-licensed attorney. (Id. ¶ 39) For Children of the Court, he serves as a volunteer Executive Director pursuant to Judge Wilson's settlement order. (Id. ¶¶ 25, 32) For Judiciocracy, he remains the publishing entity's CEO, although he sold a majority interest in 2024. (Id. ¶¶ 42, 49) His functions for both entities include editorial review, organizational governance, and - secondarily - legal advice to the organizations on matters relating to their core operations. (Amended Complaint, Dkt. 59, ¶¶ 67–68, 86)

## B. The Organization's Speech and Ensuing Investigation

Two statements on the Plaintiff-Appellants' websites form the factual basis for the ARDC's disciplinary complaint against Weinhaus. (Dkt. 13-1 at 3–4) First, on a webpage titled "Team" on Children of the Court's website, the organization included a photograph of Judge Wilson, the words "Nationwide Enforcer" underneath the photograph, and the following biographical text:

> Although he sits on a bench in Cook County, Illinois, his order has created a national organization, advocating in every state. Judge Wilson is responsible for enforcing the funding of Children of the Court pursuant to his April 18, 2023 order in Cook County.

(Amended Complaint, Dkt. 59, ¶ 65(a)) That description of Judge Wilson's role tracks the language of the Wilson settlement order itself, which was entered and enforceable in the Cook County Circuit Court. (Id. ¶¶ 28–33)

Second, *ALABnews* published a news article titled "Breaking: Dastardly Chicago Divorce Attorneys Hurst Robin Kay & Allen Have Own Client Thrown in Jail According to Legal News Journal." (Id. ¶ 65(b)) The article reported on the Paris divorce case (Cook County Case No. 2016D004685), in which Marty Paris was jailed three times while insolvent and unable to pay counsel. (Id. ¶ 50.) The article included the statement:

> In an unprecedented 'slam' on a fellow judge, another Cook County judge and leader the Hon. Thaddeus L. Wilson immediately ordered an organization be started to keep judges like [Judge Regina] Scannicchio away from cases involving children.

(Id. ¶ 65(b)) The same article noted, on its face, that Weinhaus himself "refused comment." (Id)

In January 2024, Judge Scannicchio - who had presided over the dissolution of Weinhaus's own marriage years earlier - complained to the ARDC about the foregoing speech. (Id. ¶ 52; Dkt. 26-1 at 2) The ARDC assigned the matter to Senior Counsel Tammy Evans, who took Weinhaus's sworn statement on June 13, 2024, in Springfield, Illinois (the "Springfield Statement"). (Amended Complaint, Dkt. 59, ¶ 81)

The Springfield Statement transcript, incorporated into the First Amended Complaint and previously produced, contains a series of acknowledgments by Evans that are central to this appeal. (Id. ¶¶ 81–87) Evans repeatedly acknowledged that the speech at issue appeared on the organizations' websites, not Weinhaus's personal sites. (Id. ¶ 87(b), (c)) She acknowledged that Children of the Court was created as a group project. (Id. ¶ 87(c)) She framed the ARDC's interest as discouraging "articles published that make statements about sitting judges" generally, regardless of truthfulness. (Id. ¶ 87(f)) And she explicitly warned Weinhaus against future affiliation with publications that comment on sitting judges, telling him: "don't. Because then you'll be back in front of us again." (Id. ¶ 87(h)

Eight and a half months passed without further action by the ARDC. (Id. ¶¶ 96–98) In mid-February 2025, Judiciocracy resumed an investigation into emerging allegations of lawyer-judge bribery in Cook County Circuit Court - allegations independently surfacing in several federal lawsuits. (Id. ¶¶ 96–97) Within weeks of Judiciocracy resuming that investigation, the ARDC announced it would file a formal disciplinary complaint against Weinhaus – its "Charge Pursuit". (Id. ¶¶ 98–99)

The ARDC's complaint, filed April 3, 2025, charges Weinhaus under Illinois Rules of Professional Conduct 8.2(a) (false statements about a judge) and 8.4(c) (dishonesty). (Dkt. 29, Ex. 1; Amended Complaint, Dkt. 59, ¶ 66.) The complaint does not charge Weinhaus under Rule 8.4(a) - the rule that prohibits a lawyer from violating the Rules of Professional Conduct "through the acts of another." Comment 1 to Rule 8.4(a) expressly provides that the rule "does not prohibit a lawyer from advising a client concerning action the client is legally entitled to take." (Amended Complaint, Dkt. 59, ¶ 73) No person - not Defendants, not Judge Scannicchio, not Judge Wilson - has ever alleged that the speech at issue is illegal. (Id. ¶¶ 60, 132(c))

Following Defendants' Charge Pursuit, Plaintiff-Appellants could no longer indemnify Weinhaus and, as a result, he was unable to fulfil the duties required of him. Children of the Court's letter campaigns ended as a direct result. (Id., ¶¶ 101-2) Judiciocracy lost its most experienced legal-affairs journalist, (Id., at ¶¶ 104-105); it was scooped on the lawyer-judge bribery story, (Id., at ¶ 126); has been required to pay outside consultants to perform work formerly required of Weinhaus, (Id., ¶ 104); and lost the advertising revenue that flows from timely, exclusive coverage. (Id., ¶ 116) Moreover, neither Plaintiff-Appellant has been unable to find replacement either a replacement executive or counsel and their various activities have ground to a halt. (Id., at 173-174, 126-127).

### C. The District Court's Proceedings, Order, and Judgment

Plaintiff-Appellants filed this action on March 30, 2025, asserting that Defendants' prosecution of Weinhaus was really the prosecution of the independent

entities for their organizational speech and, as a result, violated Plaintiff-Appellants' First Amendment speech rights. (Compl., Dkt. 1) The original Complaint sought declaratory and injunctive relief, together with damages, under 42 U.S.C. § 1983. (Id.) The district court denied a preliminary injunction on May 28, 2025, and on December 10, 2025, dismissed the original complaint without prejudice for lack of standing, noting in dictum that abstention principles would otherwise apply. (Dkt. 57)

Plaintiff-Appellants filed their First Amended Complaint on January 14, 2026, adding factual detail concerning:

(1) the direct and concrete injuries each organization had sustained as a consequence of Defendant-Appellees' actions and included specific facts that each Plaintiff had unsuccessfully searched for replacement counsel. (Id. ¶¶ 173–174);

(2) Defendant-Appellees' express acknowledgments at the Springfield Statement that the speech at issue was organizational (Id. ¶¶ 86–87);

(3) the timing of the ARDC's formal action -- 8.5-months of silence followed by a formal complaint within weeks of Judiciocracy's bribery investigation resuming (Id. ¶¶ 96–99); and

(4) Defendant-Appellees' selective extension of "entity speech" protection to similar speech outside the judicial-reform context (Id. ¶ 172).

The Amended Complaint also expressly alleged that, if granted the declaratory and injunctive relief sought, Weinhaus would return to full capacity for the organizations. (Id. ¶ 151)

On May 15, 2026, the district court dismissed the First Amended Complaint with prejudice finding Plaintiff Appellants lacked standing and on abstention

grounds and further denied leave to amend further. (Dkt. 68) Plaintiff-Appellants timely appealed.

## SUMMARY OF ARGUMENT

The District Court erred when it concluded that Plaintiff-Appellants lacked direct Article III Standing and/or Third Party Standing because the Amended Complaint clearly articulates a direct and palpable injury, traceability to Defendant-Appellees' Acts, and redressability by Court Order, as required by the Constitution and articulated in Spokeo, Inc. v. Robins, 578 U.S. 330, 338 (2016).

First, the Court's conclusion that Plaintiff-Appellants' injury was derivative of Weinhaus's and did not rise to the level of legally cognizable injury misreads Supreme Court and Seventh Circuit caselaw which supports the principle that an organization expresses itself through its attorney-agents, and that state action targeting those agents for the organization's protected speech inflicts a direct First Amendment injury on the organization itself. See NAACP v. Button, 371 U.S. 415, 428–29 (1963); United Mine Workers v. Ill. State Bar Ass'n, 389 U.S. 217, 222 (1967).

Next, the District Court's conclusions that declaratory relief would do nothing to resolve Plaintiff-Appellants' injuries is mistaken -- Defendant-Appellees have charged Plaintiff-Appellants' key man under Rules 8.2(a) and 8.4(c), both of which require the ARDC to prove that Weinhaus himself made the allegedly false statements. A declaratory judgment that the statements are the Plaintiff-Appellants' organizational speech would directly undermine that factual predicate.

Lastly, the District Court's alternative abstention holding cannot survive scrutiny under Sprint Communications, Inc. v. Jacobs, 571 U.S. 69 (2013). In Sprint, the Supreme Court confined Younger abstention to three narrow categories of state

proceedings and rejected expansive abstention doctrines premised on generalized notions of "intrusion" or "interference" with state adjudication. Id., at 70. Moreover, even within the Younger framework, abstention is unavailable because Plaintiff-Appellants are not parties to the state proceeding, cannot intervene, and have no adequate state forum to address the resultant harms. See Garden State Bar Ass'n v. Middlesex Cnty. Ethics Comm., 687 F.2d 801, 802 (3d Cir. 1982).

Plaintiff-Appellants' facts and allegations in the underlying Amended Complaint plainly show that they – independent private organizations – have suffered a direct and palpable injury as a result of Defendant-Appellees' conduct and that an order from the District Court could and would provide relief from the injury suffered. Moreover, because the District Court has declined to exercise its jurisdiction, Plaintiff-Appellants are bereft of any redress for Defendant-Appellees' violation of their First Amendment speech rights because they have no opportunity to intervene or otherwise be heard at the state level.

## ARGUMENT

The District Court erred when it dismissed Plaintiff-Appellants' First Amended Complaint for lack of standing and pursuant to abstention principles because: Plaintiff-Appellants suffered a real and palpable injury as a result of Defendant-Appellees' acts; the Court had the power to relieve Plaintiff-Appellants from their ongoing injury via a declaratory order; and had the Court correctly applied the abstention principles articulated in Sprint Communications, Inc. v. Jacobs, 571 U.S. 69 (2013), it would have concluded that abstention was inappropriate here because it did not fit within the narrow limits of the doctrine and was inapplicable where, as here, Plaintiff-Appellants are not parties to the underlying state action.Jacobs, 571 U.S. 69 (2013), it would have concluded that abstention was inappropriate here because it did not fit within the narrow limits of the doctrine and was inapplicable where, as here, Plaintiff-Appellants are not parties to the underlying state action.

### A. Standard of Review

The court of appeals "consider[s] *de novo* the question whether a plaintiff satisfies the standing criteria imposed by Article III of the Constitution." Lewert v. P.F. Chang's China Bistro, Inc., 819 F.3d 963, 966 (7th Cir. 2016). On review, the Court "accept[s] all material allegations of the complaint as true and construe[s] them in favor of the complaining party." Id. Similarly, the court of appeals "'review[s] Younger abstentions under a *de novo* standard of review.'" Forty One News, Inc. v.

Cty. of Lake, 491 F.3d 662, 665 (7th Cir. 2007) (quoting Crenshaw v. Supreme Court of Indiana, 170 F.3d 725, 728 (7th Cir. 1999)).

### B. Plaintiff-Appellants Have Direct Standing to Pursue Their First Amendment Claims Because They Suffered a Direct and Palpable Injury, Traceable to Defendant-Appellees, And Redressable by the Court

Standing is the "threshold question in every federal case, determining the power of the court to entertain the suit." Warth v. Seldin, 422 U.S. 490, 498 (1975). Standing contains three elements:

> "First, the plaintiff must have suffered an injury in fact-an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of-the injury has to be fairly ... traceable to the challenged action of the defendant, and not ... the result of the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."

Lujan v. Defs. of Wildlife, 504 U.S. 555, 560–61 (1992) (Scalia, J.) (internal citations and quotations omitted); Spokeo, Inc. v. Robins, 578 U.S. 330, 338 (2016). Here, the District Court incorrectly concluded that Plaintiff-Appellants' injury fails to rise to the level of a legally cognizable injury; that it was unable to offer any redress;[1] and that regardless of an injury, it was required to abstain from exercising the District Court's jurisdiction.

---

1. The District Court did not contest that Plaintiff-Appellants' injury is directly traceable to Defendants' conduct: Defendant brought charges against Plaintiff-Appellants' key man, the attorney who helps the organizations speak, and as a result, Plaintiffs' speech has been silenced.

1. *Plaintiff-Appellants suffered a legally cognizable injury – the abrogation of their First Amendment Right to Free Speech*

Defendant-Appellees' targeting of Weinhaus -- the sole attorney and executive who gave voice to Plaintiff-Appellants' judicial reform mission -- inflicted a direct, non-speculative injury on Plaintiff-Appellants' own First Amendment rights, not merely on a third party's law license. Once the ARDC announced its Charge Pursuit, Plaintiff-Appellants could not indemnify Weinhaus, and his operational capacity collapsed. Children of the Court's letter campaigns to judges - which had already produced tangible results, including its engagement with Judge William Stewart Boyd - stopped cold, (Am. Compl., Dkt. 59, ¶ 101); the organization admits the chilling effect of Defendant-Appellees' pursuit of its volunteer Executive Director is the only reason more letters have not gone out. (Id., at ¶ 102) Judiciocracy fared no better: lost its most experienced legal-affairs journalist, (Id., at ¶¶ 104-105); it was scooped on the lawyer-judge bribery story it had spent months developing, (Id., at ¶¶ 126); was forced to pay an outside consultant to publish work Weinhaus would ordinarily have handled, (Id., ¶ 104); and lost the advertising revenue that flows from timely, exclusive coverage. (Id., ¶ 116) Both Organizations have been unable to find replacement counsel and their various activities have ground to a halt. (Id., at 173-174, 126-127). Somewhat surprisingly, the District Court concluded, after its investigation into what other organizations are doing, that "Plaintiffs do not need an attorney to do the things that they complain about being unable to do…" and that "[s]ome of Chicago's most influential judicial reform organizations have non-lawyers

as Executive Directors." (Dkt. 68, pp. 6-7, n. 5)[2] These are not speculative harms - they are the direct, foreseeable consequence of removing Plaintiff-Appellants' only willing attorney from the field, precisely the theory of injury the Supreme Court has recognized for six decades.

*a. The Supreme Court Has Long Recognized an Organization's First Amendment Rights and Prohibited State Interference with the Same*

In NAACP v. Button, the Supreme Court held that "the activities of the Button, its affiliates and legal staff... are modes of expression and association protected by the First and Fourteenth Amendments which [the state] may not prohibit... under its power to regulate the legal profession." 371 U.S. 415, 428–29 (1963). Here, the ARDC has done precisely what Virginia could not: it has used its regulatory power over the bar to separate Plaintiff-Appellants from the one attorney willing to help them criticize sitting judges, thereby directly abridging Plaintiff-Appellants' associational speech rights. State interference that separates an organization from its attorney is not incidental regulation of the bar; it is an attack on the organization's own constitutionally protected advocacy. Defendant-Appellees' theory - that they may discipline the attorney while disclaiming any effect on the client - is the exact maneuver Button foreclosed. This sentiment is oft echoed. See In re Primus, 436 U.S. 412, 422 (1978) (confirming that an organization has no mouth of its own -- it

2. In the District Court's May 15, 2026 Opinion and Order, it found Plaintiffs' contention that their difficulty in replacing Weinhaus as a result of his prosecution was too speculative and surmised that Plaintiffs' difficulties was the result of a minimal operating budget but, the resolution of these questions at the pleading stage – as well as the Court's investigation into what other reform organizations are doing – is not appropriate for the motion to dismiss stage. See In re Recalled Abbott Infant Formula Prods. Liab. Litig., 97 F.4th 525, 528 (7th Cir. 2024) ("Courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party.").

speaks only through agents; and recognizing that non-profit organizations exercise associational and expressive rights through attorneys acting on their behalf, and that regulations chilling that agency relationship suppress the organization's own advocacy), 427 (recognizing that, in some instances "litigation as an adjunct to the overriding political aims of the organization" and critical political speech is crucial); See also Brotherhood of Railroad Trainmen v. Virginia, 377 U.S. 1, 8 (1964) (recognizing that that administrative or disciplinary action against attorneys serving a constitutionally protected organizational enterprise directly injures the organization, because "lawyers accepting employment under this constitutionally protected plan have a like protection which the State cannot abridge.").

As pointed out at the District Court, United Mine Workers v. Illinois State Bar Ass'n, 389 U.S. 217 (1967), is directly on point. In United Mine Workers, Illinois enjoined a mineworkers' union from employing a salaried attorney to help members pursue workers' compensation claims, reasoning that the arrangement risked unauthorized practice of law. The Supreme Court vacated the injunction, holding that the union's right to hire attorneys to assist its members in asserting their legal rights was itself protected speech, assembly, and petition activity, and that bar regulation impairing that attorney-member relationship directly burdens the organization's own constitutional rights. Id., at 221–22. The Court continued that "the First Amendment would... be a hollow promise if it left government free to destroy or erode its guarantees by indirect restraints so long as no law is passed that prohibits free speech, press, petition, or assembly as such[]" and found no actual harm

in the arrangement's operation to justify severing the union from its lawyer. Id., at 222–24.

The applicability of United Mine Workers to the facts here, is undeniable. There, the state used bar regulation to separate a membership organization from the attorney who helped its members vindicate their rights; here, Defendant-Appellees use bar discipline to separate Plaintiff-Appellants from the attorney who helps them exercise their own voice. If associational rights to organize, petition, and secure legal assistance for workers' compensation claims warranted First Amendment protection against indirect bar restraints, then Plaintiff-Appellants' rights to publish judicial-reform journalism and petition sitting judges through Weinhaus demand no less – to the contrary, speech critical of public officials sits at the core of the Amendment. If anything, the associational interest here is paramount: Plaintiff-Appellants are not merely processing benefit claims but engaging in the kind of political and civic advocacy the Court has called among "the most precious of the liberties safeguarded by the Bill of Rights." Id., at 222. Defendant-Appellees' strategy - attack the agent to silence the principal - is the very indirect restraint United Mine Workers forbids.

*b. The Amended Complaint Does Not Seek to Direct the Prosecution or Non-Prosecution of Weinhaus or Any Other Individual*

The District Court relied on Linda R. S. v. Richard D., for the proposition that "a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another." May 15, 2026 Opinion and Order (Dkt. No.: 68) (quoting Linda R. S., 410 U.S. 614, 619 (1973)). However, Linda R.S. addressed a narrow and factually distinct question: whether a private citizen could compel a state prosecutor.

The plaintiff there asserted no independent constitutional interest of her own; her sole claimed injury was that a third party, her child's father, was not being prosecuted under Article 602 of the Texas Penal Code. The Court held that this generalized interest in seeing the laws enforced against someone else was constitutionally insufficient, because the plaintiff had not shown that prosecuting the father would, in fact, secure the support payments she actually sought; the statute created "a completed offense with a fixed penalty," so any relief would result "only in the jailing of the child's father," leaving the connection between prosecution and her desired remedy merely "speculative." Id., at 618. In short, Linda R.S. stands for the proposition that a bystander lacks standing to litigate someone else's criminal exposure when their own asserted injury does not flow directly from that exposure. Here, Plaintiff-Appellants' claims are directly resultant from the prosecution of their key man.

This lawsuit, and Plaintiff-Appellants' claims bear no resemblance to demand to prosecute, or not prosecute as the case may be, at issue in Linda R.S.. Plaintiff-Appellants do not ask this Court to compel or forbid Weinhaus's prosecution, nor do they assert a derivative interest in whether Weinhaus himself is disciplined. They assert that Defendant-Appellees' prosecution is itself the mechanism inflicting a direct, present injury on Plaintiff-Appellants' own First Amendment rights of speech and association -- the abrogation of their letter campaigns, their journalistic operations, and their advertising revenue. Unlike Linda R.S., where the nexus between the requested relief and the plaintiff's injury was speculative, here the nexus

is admitted: Defendant-Appellees' own transcript shows Evans pressuring Weinhaus to stop producing "articles... that make statements about sitting judges[,]" (Dkt., 59, ¶ 86 (f)); confirming that the prosecution's very purpose and effect was to silence Plaintiff-Appellants' *entity* speech. Linda R.S.'s bar on third-party standing to police another's prosecution simply has no application where, as here, Plaintiff-Appellants are not bystanders to Weinhaus's discipline but are the direct targets of a content-based attack conducted through him.

2. *Plaintiff-Appellants' Injuries Can Be Redressed By Declaratory And Injunctive Relief Finding Plaintiff-Appellants' Speech Is Its Own And Not Weinhaus's*

"Redressability 'examines the causal connection between the alleged injury and the judicial relief requested.'" Lac Du Flambeau Flambeau Band v. Norton, 422 F.3d 490, 501 (7th Cir. 2005) (citing Allen v. Wright, 468 U.S. 737, 753 n.19 (1984)). This Court continued "[o]n a motion to dismiss, a plaintiff need only plead 'that there is a 'substantial likelihood' that the relief requested will redress the injury claimed.'" Id., at 501 (citing Duke Power Co. v. Carolina Envt'l. Study Group, Inc., 438 U.S. 59, 75 n.20 (1978)).

The Defendant-Appellees charge Weinhaus under Rules 8.2(a) and 8.4(c), each of which requires the ARDC to prove that Weinhaus *himself* made a false statement of fact. (Dkt. 13-1, pp. 5–6.) The ARDC has *not* charged Weinhaus under Rule 8.4(a), which would permit liability for *assisting* another's misconduct "through the acts of another." Defendant-Appellees conceded as much in their motion to dismiss, arguing that Plaintiff-Appellants' Rule 8.4(a) framing was "based on a non-event[.]" (Dkt. 62, p. 8) Defendant-Appellees cannot have it both ways: they cannot tell the district court

that Rule 8.4(a) is irrelevant to their charging theory while having the district court rely on Rule 8.4(a) to argue a favorable declaration would not cure Plaintiff-Appellants' injury. Nonetheless, Defendant-Appellees have already relied on Rule 8.4(a) when securing the denial of Plaintiff-Appellants' preliminary injunction and explicitly invoked the same (Transcript, May 28, 2025 Hearing, Dkt. 39, p. 42) And the Court boiled it down to the essence of the redressability issue and non-interference issue succinctly: "...there is a rule that prevents barred attorneys from acting through another to do things that they would not be able to do on their own behalf." As noted in the Am. Compl., if applied, even giving Plaintiff-Appellants' redress of calling their own speech their own, would allow Defendant-Appellees to proceed against Weinhaus.

A declaratory judgment that the speech at issue is the Plaintiff-Appellants' organizational speech - and that Weinhaus's role in producing it was as Plaintiff-Appellants' agent - would directly contradict the factual predicate of the ARDC's existing charges against Weinhaus. (Dkt. 62 pg. 4)("Respondent made the above statement...") That is what redressability requires: "a 'substantial likelihood' that the relief requested will redress the injury claimed." <u>Lac Du Flambeau Flambeau Band</u>, 422 F.3d at 501. It does not require relief that would eliminate every conceivable future prosecution. The ARDC remains free, after such a declaration, to pursue Weinhaus for actual violations. And as they noted at great length on May 28, 2025, they still can do so. What the ARDC may not do, consistent with Plaintiff-Appellants' First Amendment rights, is treat the Plaintiff-Appellants' organizational

speech as Weinhaus's personal speech for the purpose of evading the constitutional limits on regulating the Plaintiff-Appellants themselves.

The Declaratory Judgment Act exists precisely to permit this kind of remedy. See 28 U.S.C. § 2201; Wilton v. Seven Falls Co., 515 U.S. 277, 288 (1995) (declaratory relief is "a remedial arrow in the district court's quiver"); Steffel v. Thompson, 415 U.S. 452, 465 (1974) (Brennan, J.) (Recognizing the Declaratory Judgment Act was intended to provide an alternative to injunctive relief specifically against state officials).

The district court's remaining redressability concerns are equally answerable. The court characterized Plaintiff-Appellants' requested injunction against "engaging in further unconstitutional conduct by attacking attorneys who advise organizations who conduct Judicial Reform" as an impermissible advisory order against unspecified future conduct. (Dkt. 68, p. 9.) Plaintiff-Appellants do not dispute that any injunction must be appropriately tailored on remand. But the proper remedy for an overbroad injunction request is not dismissal of the case; it is to enter the injunctive relief at an appropriate level of specificity after merits proceedings. See Fed. R. Civ. P. 65(d). Standing is satisfied where some relief - declaratory or injunctive, broad or narrow - would address the asserted injury. Crawford v. Marion Cnty. Election Bd., 472 F.3d 949, 951 (7th Cir. 2007), aff'd, 553 U.S. 181 (2008) ("Standing . . . requires only a minimal showing of injury."). What is evident is that the First Amendment provides robust protections for the critique public officials,[3] that the Plaintiff-Appellants seek

3. See, for e.g. Garrison v. Louisiana, 379 U.S. 64, 77 (1964) ("Of course, any criticism of the manner in which a public official performs his duties will tend to affect his private, as well as his public, reputation. The

to do so, and that the Defendant-Appellees have admitted trying to stop it by attacking the attorney agent for the Plaintiff-Appellants' speech. A well-directed district court could not escape finding an appropriate limited injunctive relief to ensure standing. The declaratory relief described above easily clears that low bar.

### C. Alternatively, Plaintiff-Appellants have Third-Party Standing Under Powers v. Ohio

If the Court declines to conclude that Plaintiff-Appellants have standing to seek redress of their injuries directly, alternatively, Plaintiff-Appellants also satisfy the requirements for third-party organizational standing. Powers v. Ohio requires three things: (i) the litigant's own injury in fact giving it a sufficiently concrete interest in the dispute; (ii) a close relationship with the third party whose rights are at stake; and (iii) some hindrance to the third party's ability to protect its own interests. 499 U.S. 400, 410–11 (1991). Here, all three are satisfied.

The first element, *injury*, is established by the injuries described at length in the First Amended Complaint and again above. The second, *a close relationship*, is satisfied because Weinhaus is the Plaintiff-Appellants' Executive Director, CEO, and volunteer attorney-agent - a more intimate relationship than simple attorney-client or doctor-patient relationships that have previously supported third-party standing. See Caplin & Drysdale, Chartered v. United States, 491 U.S. 617, 623 n.3 (1989) (reviewing the relationship required to support third party standing).

---

New York Times rule is not rendered inapplicable merely because an official's private reputation, as well as his public reputation, is harmed. The public-official rule protects the paramount public interest in a free flow of information to the people concerning public officials, their servants.")

The third element, *hindrance*, is also satisfied. Weinhaus's interests and the Plaintiff-Appellants' interests are not coextensive. Weinhaus's professional life and his licensure are at stake in the ARDC proceeding; the Plaintiff-Appellants' First Amendment rights to associate with attorneys, to speak on issues of judicial reform, and to operate as organizations are at stake here. (Dkt. 59, ¶¶ 138–43) Plaintiff-Appellants alleged - and the allegation must be accepted as true - that Weinhaus has already "sacrificed his duties to the Plaintiff-Appellants as a result of the actions of Defendant-Appellees and will continue to do so until the Plaintiff-Appellants' speech is considered their own." (Id., ¶ 142) Weinhaus's rational self-interest in preserving his law license creates a structural hindrance to his fully advancing the Plaintiff-Appellants' associational and expressive interests.

The district court rejected this argument on the ground that Weinhaus can protect his own interests and that he had "already raised similar arguments in his own response to the ARDC." (Dkt. 68, pp. 8-9) But the question is not whether Weinhaus *can* raise some constitutional defense; the question is whether he can adequately vindicate *the Plaintiff-Appellants'* rights. He cannot. Weinhaus cannot obtain declaratory recognition of the Plaintiff-Appellants' speech rights as such. He cannot obtain damages on the Plaintiff-Appellants' behalf. He cannot obtain prospective injunctive relief protecting Plaintiff-Appellants' future ability to associate with other attorneys. And, critically, he has every incentive to settle or accept discipline on terms that protect his license but leave the Plaintiff-Appellants' core

constitutional injury unaddressed. That is the structural *hindrance* contemplated in Powers.

### D. Abstention Is Inappropriate Where, As Here, It Does Not Fit Within the Three Narrow Categories of State Proceedings Articulated in Sprint and Plaintiff-Appellants Are Not Parties to the State Court Proceeding

In its May 15, 2026 Opinion and Order, the District Court advised that even if Plaintiff-Appellants have standing (*they do),* the court must abstain. This conclusion is mistaken. "Federal courts, it was early and famously said, have 'no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given.' Jurisdiction existing, [the Supreme Court] has cautioned, a federal court's 'obligation' to hear and decide a case is 'virtually unflagging.'" Sprint Commc'ns, Inc. v. Jacobs, 571 U.S. 69, 77 (2013) (quoting Cohens v. Virginia, 6 Wheat. 264, 404 (1821)).

#### 1. *The Supreme Court Has Explicitly Instructed That the Younger Abstention Doctrine Is Confined to Three Narrowly Defined Classes Of "Exceptional" Cases, None of Which Are Applicable Here*

The District Court treats abstention as required "where a federal court is asked to impose upon a state suit and the plaintiff has failed to show they do not have an adequate remedy in state law, regardless of whether the specific requirements of the Younger doctrine are met." (May 15, 2026 Opinion and Order, Dkt., p. 11) (citing SKS & Associates v. Dart, 619 F.3d 674, 677-80 (7th Cir. 2010)[4] and J.B. v. Woodard,

4. The District Court relied on SKS & Assocs. and Woodard for the proposition that federal courts must abstain when asked to impose upon state proceedings when plaintiffs have a remedy in the state proceedings. However, this reliance was misplaced because both decisions turned on the availability of an adequate state forum for those plaintiffs and that those plaintiffs were trying to shape the outcome and administration of ongoing state proceedings. Here, Children of the Court and Judiciocracy are non-parties to Defendants' proceedings. They have

997 F.3d 714, 722 (7th Cir. 2021). But that formulation is precisely the "expansive interpretation" the Supreme Court has rejected.

In New Orleans Public Service, the Supreme Court held that abstention is "the exception, not the rule," and reaffirmed that "only exceptional circumstances justify a federal court's refusal to decide a case in deference to the States." 491 U.S. 350, 359 & 368 (1989). The Court rejected a broad abstention regime that would allow federal courts to routinely decline jurisdiction whenever a state regulatory process was implicated, explaining that such an approach "would make a mockery" of the exceptional circumstances' requirement. Id., at 368. In Sprint, a unanimous Supreme Court clarified and confirmed the narrow scope of the *Younger Abstention Doctrine*. Sprint reaffirmed that federal courts have a "virtually unflagging obligation" to exercise the jurisdiction Congress has given them, and that Younger supplies only a limited exception in three narrowly defined classes of "exceptional" cases. Those circumstances are: "[f]irst, Younger preclude[s] federal intrusion into ongoing state criminal prosecutions. Second, certain civil enforcement proceedings warranted abstention. Finally, federal courts refrained from interfering with pending civil proceedings involving certain orders . . . uniquely in furtherance of the state courts' ability to perform their judicial functions." Sprint, 571 U.S. at 78 (internal citations omitted, quoting New Orleans Public Service, 491 U.S. at 368).

---

no procedural mechanism to assert their own First Amendment claims. They cannot recover damages or enjoin Defendants' conduct. They are not asking the Federal Court to supervise, accelerate, slow, or otherwise manage any state court proceedings. Instead, they seek protection against the State's use of attorney disciplinary proceedings as an indirect tool to suppress their organizational speech -- precisely the kind of constitutional injury § 1983 exists to remedy when state processes do not. Declaring Plaintiff-Appellants' speech "Plaintiff-Appellants' speech" does not tell Defendant-Appellees they cannot prosecute Weinhaus when they have explained to the district court that they very much still can. (Transcript, May 28, 2025 Hearing, Dkt. 39, p. 41-43)

Sprint, 571 U.S. at 78 (internal citations omitted, quoting New Orleans Public Service, 491 U.S. at 368). The Defendant-Appellees' abrogation of Plaintiff-Appellants' First Amendment Rights does not fall into any of those categories.

Here, there is no doubt that Plaintiff-Appellants here are not parties to any criminal prosecution, civil enforcement action, or order-enforcement proceeding at all - they are complete strangers to Defendant-Appellees' proceedings against Weinhaus. A generalized reluctance to "interfere" with a state regulatory body, untethered to one of these three categories, is exactly the theory Sprint forecloses.

The rule makes plain why: New Orleans Public Service held that abstention is "the exception, not the rule," and that "only exceptional circumstances justify a federal court's refusal to decide a case in deference to the States[.]" The rule makes plain why: New Orleans Public Service held that abstention is "the exception, not the rule," and that "only exceptional circumstances justify a federal court's refusal to decide a case in deference to the States[.]" Id., at 368. The Supreme Court expressly rejected a broad abstention regime that would allow federal courts to routinely decline jurisdiction whenever a state regulatory process was implicated, warning that such an approach "would make a mockery" of the exceptional-circumstances requirement. Id., at 368. The Opinion's reasoning - that abstention is proper because the ARDC proceeding is ongoing and Plaintiff-Appellants presumably have an "adequate remedy" - is the very "mockery" the Supreme Court condemned. It collapses the Middlesex factors into a freestanding test, notwithstanding that Sprint held the "important state interest" and "adequate opportunity" considerations "were,

instead, *additional* factors appropriately considered by the federal court before invoking *Younger*" - not independent triggers for abstention divorced from one of the three exceptional categories. Sprint, 571 U.S. at 71. Because this case fits none of the three categories, the Younger inquiry should have ended before the Court ever reached the Middlesex factors.

2. *The Middlesex Factors Cannot Be Satisfied Because Plaintiff-Appellants Have No Remedy at the State Forum*

Even assuming, arguendo, that Younger abstention could be considered, such analysis fails the third Middlesex factor - whether the state level proceeding "provide[s] an adequate opportunity to raise [federal] challenges. Id., at 71. Plaintiff-Appellants are not the respondents in the Defendant-Appellees' proceeding; Weinhaus alone stands accused. The Amended Complaint alleges, and the Opinion does not dispute, that Plaintiff-Appellants "are not permitted to intervene in nor otherwise appear in support of their Executive Director in any related state proceedings." (First Amended Complaint, Dkt., 59, ¶ 11) As nonparties barred from intervention, Plaintiff-Appellants cannot present evidence on their own behalf, call witnesses, conduct discovery, or seek damages or prospective injunctive relief in the ARDC forum - remedies that exist only in this federal action. Defendant-Appellees' proceeding against Weinhaus concerns only whether Weinhaus violated the Rules of Professional Conduct; it cannot adjudicate Plaintiff-Appellants' independent First Amendment injuries, award them damages, or enjoin future conduct directed at Plaintiff-Appellants' attorneys. Worse yet, it is judges ruling on who can say what about judges prosecuted by a disciplinary body reporting to judges for a profession

whose entire work-product is overseen by judges. Third-party judicial reform non-profits and judge-critical media companies are strangers to that closed system of judicial white-knuckling criticism of the lawyers who stand before them. Nonetheless, interfering with the Plaintiff-Appellants' access to its attorney-executives and then giving them no chance to intervene is precisely the scenario where Younger cannot hold.

And in the seminal case on the issue related to attorney discipline, the rules governing Abstention squarely resolve this scenario. When Middlesex was remanded, the Third Circuit held that "abstention is improper with respect to such parties" who are not participants in the underlying state proceeding. Garden State Bar Ass'n v. Middlesex Cnty. Ethics Comm., 687 F.2d 801, 802 (3d Cir. 1982) (citing New Jersey-Philadelphia Presbytery of the Bible Presbyterian Church v. New Jersey State Board of Higher Education, 654 F.2d 868, 881 (3d Cir. 1981)). The controlling principle, as articulated in NJ-Philadelphia Presbytery, is that when "nonparties to the state enforcement proceedings [] assert independent constitutional interests[, they] may advance those interests in a separate federal action." 654 F.2d at 881 (citing Steffel v. Thompson, 415 U.S. 452 (1974)). Plaintiff-Appellants are exactly the type of nonparties asserting independent constitutional interests - their own First Amendment associational and speech rights, distinct from Weinhaus's professional-conduct defense.

The Opinion's footnote observation that "the question is whether Plaintiff-Appellants have an adequate remedy at state law, not whether Plaintiff-Appellants

are permitted to intervene in the ARDC action" inverts the correct inquiry. Where intervention is barred, the absence of a mechanism to intervene *is* the absence of an adequate remedy; a forum in which a party cannot appear, present evidence, or obtain relief is not a forum "adequate" for Middlesex purposes. Because Plaintiff-Appellants will have no opportunity whatsoever to raise their federal constitutional challenges with Defendant-Appellees, the "adequate remedy" requirement cannot be satisfied, and therefore abstention is independently improper on this ground alone.

## CONCLUSION

The District Court's dismissal and Judgement should be vacated, and this case should be remanded for further proceedings because the Plaintiff-Appellants have standing to seek redress for the abrogation of their First Amendment Free Speech Rights and Abstention would be inappropriate here.

Dated: July 22, 2026

Respectfully submitted,

***/s/ Adam Florek***

Adam Florek
IARDC No: 6320615
N.D. Ill. Gen. Bar No.: 6320615
Florek Law, LLC
3843C E. Tremont Ave.
Bronx, NY 10465
Tel: +1 (929) 229-2268
Email: aflorek@florekllc.com

Antonio Valiente-Rivera
N.D. Ill. Gen. Bar No.: 12326
Torre de La Reina - Suite 203
450 Avenida de La Constitucion
San Juan, Puerto Rico 00901
Tel: (787) 782-9544
Email: lcdoavaliente@live.com

## CERTIFICATE OF COMPLIANCE WITH FED. R. APP. PRO. 32(A)(7) AND 32(G) AND CIRCUIT RULE 32(C)

The undersigned, counsel for the Plaintiff-Appellants, Children of the Court and Judiciocracy LLC, furnishes the following in compliance with Fed. R. App. Pro. 32(a)(7) and hereby certifies that this brief conforms to Rule 32(a)(7) for a brief produced with a proportionally spaced font, containing 7,026 words and the typeface is Century Schoolbook, 12 point.

Dated: July 22, 2026

Respectfully submitted,

*/s/ Adam Florek*

Adam Florek
IARDC No: 6320615
N.D. Ill. Gen. Bar No.: 6320615
Florek Law, LLC
3843C E Tremont Ave.
Bronx, NY 10465
Tel: +1 (929) 229-2268
Email: aflorek@florekllc.com

Antonio Valiente-Rivera
N.D. Ill. Gen. Bar No.: 12326
Torre de La Reina - Suite 203
450 Avenida de La Constitucion
San Juan, Puerto Rico 00901
Tel: (787) 782-9544
Email: lcdoavaliente@live.com

## CERTIFICATE OF SERVICE

The undersigned, counsel for the Plaintiff-Appellants, hereby certifies that on Wednesday, July 22, 2026, electronic copies of the Brief and Required Short Appendix of Appellant and one copy of the Separate Appendix were delivered by e-mail and CM/ECF to counsel for the Defendant-Appellees Attorney Registration and Disciplinary Commission, Lea S. Gutierrez, and Tammy Evans.

Dated: July 22, 2026

Respectfully submitted,

*/s/ Adam Florek*

Adam Florek
IARDC No: 6320615
N.D. Ill. Gen. Bar No.: 6320615
Florek Law, LLC
3843C E Tremont Ave.
Bronx, NY 10465
Tel: +1 (929) 229-2268
Email: aflorek@florekllc.com

Antonio Valiente-Rivera
N.D. Ill. Gen. Bar No.: 12326
Torre de La Reina - Suite 203
450 Avenida de La Constitucion
San Juan, Puerto Rico 00901
Tel: (787) 782-9544
Email: lcdoavaliente@live.com

**CIRCUIT RULE 30(D) STATEMENT**

Pursuant to Circuit Rule 30(d), counsel certifies that all material required by Circuit Rule 30(a) and (b) are included in the appendix.

Dated: July 22, 2026

Respectfully submitted,

*/s/ Adam Florek*

Adam Florek
IARDC No: 6320615
N.D. Ill. Gen. Bar No.: 6320615
Florek Law, LLC
3843C E Tremont Ave.
Bronx, NY 10465
Tel: +1 (929) 229-2268
Email: aflorek@florekllc.com

Antonio Valiente-Rivera
N.D. Ill. Gen. Bar No.: 12326
Torre de La Reina - Suite 203
450 Avenida de La Constitucion
San Juan, Puerto Rico 00901
Tel: (787) 782-9544
Email: lcdoavaliente@live.com

# **Required Short Appendix**

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **Children of the Court, a non-profit corporation,** and, **Judiciocracy LLC** | ) | |
| *Plaintiffs*, | ) | Case No: 25-cv-03387 |
| v. | ). | Hon. April M. Perry |
| **Attorney Registration and Disciplinary Commission, Lea S. Gutierrez, and Tammy Evans, in their official capacities** | ) | |
| *Defendants*. | | |

**FRIST AMENDED COMPLAINT**

Children of the Court, a non-profit corporation, and Judiciocracy LLC ("Judiciocracy") (together "Plaintiffs"), bring the underlying lawsuit for, *inter alia*, violations of Plaintiffs' First Amendment rights for interfering with their access to legal counsel and for preventing their ability to speak. Plaintiffs are seeking declaratory relief from Defendants Lea S. Gutierrez and Tammy Evans in their official capacities as administrator for Illinois' Attorney Registration and Disciplinary Commission ("ARDC"), (together "Defendants") to ascribe the Plaintiffs' speech as their own. Defendants admit they are attempting to stifle criticism of judicial officers by attacking the attorneys who work for it for one act alone – helping the Plaintiffs *speak legally*. Plaintiffs seek to enjoin Defendants from further ascribing organizational speech to their attorney for the purposes of punishment. Plaintiffs additionally seek damages. Plaintiffs allege as follows:

## THE PARTIES

1. Plaintiff Children of the Court is a Missouri non-profit corporation.

2. Plaintiff Judiciocracy LLC ("Judiciocracy") is a Missouri limited liability company.

3. Defendant Illinois Attorney Registration and Disciplinary Commission that is a public body responsible for attorney conduct.

4. The ARDC is a state actor, at all times acting under the color of state law.

5. Defendant Lea S. Gutierrez is the current Administrator of the ARDC and is being sued only in her official and representative capacity

6. At all times material hereto, she has been a state actor, acting under the color of state law.

7. Defendant Tammy Evans is Senior Legal Counsel for the ARDC and is being sued only in her official and representative capacity.

8. At all times material hereto, she has been a state actor, acting under the color of state law.

**<u>JURISDICTION AND VENUE</u>**

9. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343, because Plaintiffs allege violations of constitutionally protected rights and privileges.

10. The Plaintiffs are not the subject of nor are they a party too any related state proceeding: *judicial*, *administrative*, or otherwise.

11. Plaintiffs are not permitted to intervene in nor otherwise appear in support of their Executive Director in any related state proceedings.

12. Plaintiffs have no other avenue of redress for violations of their First Amendment rights than to invoke federal laws which proport to protect the same from abrogation by state acts.

13. For the reasons stated in Paragraphs 10-12, abstention pursuant to the *Younger Abstention* doctrine is inappropriate.

14. The Court has personal jurisdiction over Defendants because each of the Defendants have operated and currently operates within the Northern District of Illinois and *importantly* each of the acts giving rise to the current lawsuit occurred within the Northern District of Illinois.

15. Venue is proper in the Northern District of Illinois pursuant to 28 U.S.C. § 1391(b)(2) because the acts or omissions giving rise to Plaintiffs' claims occurred in this District – specifically, Plaintiffs' constitutionally protected rights were violated within the Northern District of Illinois.

## **FACTUAL ALLEGATIONS**

*Children Of The Court*

16. Children of the Court was founded by Social Entrepreneurship students and their professor – Coach Weinhaus (hereafter "Mr. Weinhaus") – at UCLA in 2023. It always was and is a group endeavor.

17. The students lead with all aspects of the creation of the organization. The students grappled with the toughest issue in judicial reform – lawyers are punished by disciplinary bodies for criticizing judges who run those very same disciplinary bodies. The group determined that finding an attorney willing to help the organization speech even though that person may become a target of people just like the Defendants was integral to the value and success of the organization.

18. Likewise, the group learned and applied an important part of non-profits – they rarely have money for marketing or operations. Thus, getting guaranteed operating funding is a big selling point. Selling points like that should be promoted with alacrity to improve acceptance to help accomplish the non-profits mission.

19. Thus the students created an advocacy group committed to helping children of divorce visit the courtrooms and judges who had an outsized influence on their childhood once they become adults as alleged in *Children of the Court et al v. Hon. Abbey Fishman Romanek*, N.D. Ill. Case 1:24-cv-08785[1]; and advocating for court administrative changes that prioritize the assignment of parental rights case in family law to judges with relevant personal experience, i.e. having once been parents themselves or members of the foster community. These twin purposes are intended to ensure that children's best interests are always considered for the improvement of the judicial system.

20. Children of the Court aims to achieve these goals through, *inter alia*, research, advocacy, and collaboration with legal professionals to help judges and understand the unique needs of the children that are impacted by their decisions, resulting in more compassionate and informed decision making. By ensuring judges have the appropriate experience when making parental decisions, Children of the Court seeks to increase the esteem the public has for the judiciary.

21. Children of the Court works with judges when they avail themselves to speak. A sample of those judges include:

a. Hon. William Steward Boyd (Cook County, Illinois)

b. Hon. Robert W. Johnson (Cook County, Illinois)

c. Hon. Cory Liu (Travis County, Texas)

22. Children of the Court advises these judges, when asked, for its thoughts related to one of its core principles – advocating against the assignment of parental rights cases to judges

[1] Aside from the claims made therein, that case raises an important issue of "who is responsible for courtrooms being open to the public?" The case was dismissed and is before the Seventh Circuit Court of Appeals.

who lack any parental experience and are not active members of the foster care system. Judge Liu in Texas is one such judge who is subject to a master calendar – he could have any case on any given day. Although it is inappropriate to share the details of Children of the Court's counsel, Judge Liu received thoughts on pitfalls to avoid in keeping with the organization's mission to improve the justice system.

23. Children of the Court was funded as part of a settlement between Mr. Weinhaus and a third-party in an unrelated lawsuit. See Cook County Case # 2016CH07155.

24. The lawsuit required judicial approval by the Hon. Thaddeus L. Wilson under Delaware Chancery Ct. Rule 23.1.

25. Judge Wilson reviewed the settlement agreement which specifically called for the funding of Children of the Court and explained part of its mission. The settlement agreement contained these clauses:

> WHEREAS, Plaintiff Weinhaus is requiring Locality to agree to fund the non-profit he worked to build as part of a class project at the University of California Los Angeles (UCLA) called "Children of the Court" which will seek to ensure domestic relations judges who have never been a parent or are not part of the foster system are not ruling on issues related to the care of children;

> Children of the Court in an amount not to exceed $10,000 per year for 10 years. Plaintiff Weinhaus agrees not to earn compensation from this venture as a condition of this funding.

("WILSON SETTLEMENT TERMS").

27. Judge Wilson was aware of Weinhaus' prior judicial reform activism and particularly his concerns about improper training, experience, and oversight of the Hon. Regina A. Scannicchio because another party had put that information into motions before Judge Wilson. He had considered and ruled on those prior motions.

28. Nonetheless, even though the Hon. Regina A. Scannicchio is widely known not to have had parental experience and was not known to be an active member of the foster community, Judge Wilson approved the settlement which included the WILSON SETTLEMENT TERMS

calling for Children of the Court to "ensure domestic relations judges who have never been a parent or are not part of the foster system are not ruling on issues related to the care of the children."

29. His 15-day review period allowed him also to determine whether the $100,000 that would be paid to the non-profit at the expense of the Defendant's shareholders was a fair settlement. He ultimately decided that the total settlement, including the Wilson Settlement Terms, was worthy of approval.

30. He then agreed to enforce the whole thing. That is, he ordered its foundation and agreed to enforce its funding.

31. Judge Wilson expressed great enthusiasm in public at the settlement of the case. His agreement to the terms, and thereafter, to enforce them as in his order were greatly appreciated by the parties.

32. Consequentially, although Children of the Court receives 10 years of funding and Weinhaus is to lead it, according to the Judge Wilson approved settlement, Mr. Weinhaus must serve as a *volunteer* to the organization, ensuring no violation of the Private Inurement doctrine.

33. Now, the Hon. Patrick T. Stanton oversees and enforces the funding of Children of the Court. As recently as October 14, 2025, he issued declaratory relief:

> "declaring that Children of the Court retains the authority to indemnify Weinhaus at its discretion for actions taken on behalf of Children of the Court without violating the existing Settlement Agreements of April 18, 2023."

34. The organization has a board comprised of four members, and an operations manager who was part of the founding student UCLA cohort.

35. The organization is also an association which benefits its members who sign onto the "Children of the Court Pledge" which assists the association's members help their minor

children visit the courtrooms where their childhood was decided by judicial penstroke upon the children becoming adults. Eg. *Children of the Court et al. v. Abbey Fishman Romanek*, No. 1:2024cv08785 (N.D. Ill. 2025). Children of the Court sues on behalf of its members, their minor children, and their adult children.

36. Mr. Weinhaus is a member and beneficiary of Children of the Court's services in that he has taken the Pledge while being a custodial parent of minor children and has adult children.

37. Members of Children of the Court rely on its operating capacity attorney to assist it in litigation. Even Mr. Weinhaus as a member is allowed to rely on the operating capacity attorney to assist it in litigation but cannot do so here because of the actions of the Defendants.

*Judicocracy LLC- The Legal News Publisher*

38. Mr. Weinhaus, early in his career formed *BlockTribune* (under a prior name) – a publication covering cryptocurrency news, later a cryptocurrency legal journal owned by his consulting company. He also founded and ran: *DiplomaPrivilege* – a news site covering the movement to follow Wisconsin's lead in allowing bar admission without a bar exam; *ALABnews* and *AbusiveDiscretion* legal publications covering attorney misconduct and judicial eventually forming the publishing company, Judiciocracy LLC.

39. As Weinhaus testified to the ARDC, Judiciocracy was created to report on legal matters as a *media* company, not as a lawyer or law firm, so that it could be sold as such and therefore he felt the rules of professional conduct required it be separate from his law firm in 2023 to protect both his legal practice and the publication for journalistic reasons.

40. Judiciocracy acquired the publishing assets from Weinhaus' other entities in 2023 upon its formation and began positioning itself for sale as a standalone entity.

41. Post-acquisition, Judiciocracy took full control of *ALABnews* and *AbusiveDiscretion* (and the other publications) including their news sites, their news production, their editorial standards, their customer service, their advertisements, their social media accounts, and their database backups of the publications.

42. Judiciocracy's public records reporting generally publishes 10 stories per day across news sites with a shared staff and IT function. Weinhaus remains its CEO.

43. Judiciocracy's editorial policy meets the highest standards in public records reporting. It also boasts some obvious corrective measures in case of errors or disputes:

a. Any factual error reported to the company or its publications is corrected in a timely manner;

b. Any update to a story case is encouraged to be submitted as a news lead;

c. Any story subject, like a legal professional, such as attorney or judge, is offered the chance, for free, to write their own factual rebuttal using the top-tier editorial and ombudsman-like standards.

44. Although the company has made few errors, it has corrected them without hesitation. Multiple judges and lawyers have obliged themselves of Judiciocracy's straight news approach tor updating their own misconduct proceedings.

45. In one instance, a judge in Texas, the Hon. Ursula A. Hall, reached out to the undersigned counsel (who forwarded the message along to Mr. Weinhaus) to have her own disciplinary record updated by Judiciocracy. Judiciocracy's news production process then took over.

46. Judiciocracy's investigative reporting into public records has been recognized by the Cook County Circuit Court where it appropriately received a fee waiver for a data request into judicial substitutions.

47. Judiciocracy makes FOIA requests of public bodies, gets sued in its own name, and sues in its own name where it is the Plaintiff in more than 20 lawsuits

48. Judiciocracy is also a member of the Coalition Opposing Governmental Secrecy.

49. Weinhaus sold a majority interest in Judiciocracy in 2024 but retains his membership in the Missouri limited liability company through his single member limited liability company.

**REPORTING ON THE *PARIS* CASE**

50. The "Paris case" is a well-known divorce case in the Chicago-land area, including real estate developer Marty Paris, his ex-wife, and their *seven* children. (*Paris v. Paris*, Cook County Circuit Court Case # 2016D004685 ("Paris Divorce Case") wherein Mr. Paris was jailed - three times - while being insolvent, in bankruptcy, and unable to pay his lawyer's fees.

51. Judiciocracy published a series of stories related to the Paris Divorce Case, researched and reviewed the public records, and found experts in the field of criminal procedure, citing, Dr. Isaac Amon, Professors Jayne Ressler of Brooklyn Law School, and Doug Rendleman of Washington and Lee School of Law to opine on the matter.

52. One of those stories led the Hon. Regina A. Scannicchio to complain to the ARDC about Mr. Weinhaus' involvement with the Plaintiffs. ECF #26-1, Exhibit F, pgs. 1-8.

53. She made multiple false claims (in fact all of them) by ascribing the speech about which she complained to Mr. Weinhaus, rather than in his capacity assisting the organizational Plaintiffs.

54. Judge Scannicchio made no complaints about anything other than Plaintiffs' organizational speech, but directed that attack against the Plaintiffs' attorney-executive, Mr. Weinhaus.

55. In one of her outlandishly wrong claims, Judge Scannicchio accused the Plaintiffs' executive of faking another judge's signature in an obvious attempt to use the Defendants' state authority to retaliate against the Plaintiffs for speech she did not like during an election year.

56. Weinhaus' then attorney, Ryan Cleys, responded, demonstrating that Judge Scannicchio had made that incorrect claim (and showed the other claims were wrong too), that the information from the Plaintiffs' site adequately represented the WILSON SETTLEMENT TERMS/docket, and that the speech was clearly that of the *Plaintiffs*, not Mr. Weinhaus. (See *Farah v. Double M. Express Inc*, Case # 1:24-cv-01757 N.D.Ill ECF #4-1 Exhibit to Corrected Mot. For Pro Hac Vice (*granted*).) ECF #26-1, Exhibit J, pp. 156-64.

57. Further, as the attorney in the case before Judge Wilson and familiar with the docket, Attorney Cleys represented that the speech in question was true.

58. Judge Wilson, according to the Defendants, has some complaint with the language of Plaintiffs' publications about which he will testify under oath. But, apparently, according to his court system, not the truthfulness. He has recused himself from further adjudicating the WILLSON SETTLEMENT TERMS only after the Defendants brought their charges in an admission that he was responsible for them *prior* to his recusal, as validated by Judge Stanton's ruling, *supra*. Judge Wilson had done what his docket said he did, until he decided not to, later.

59. Judge Wilson has never complained to the Plaintiffs about any speech.

60. Nobody has ever claimed the Plaintiffs' speech was illegal.

**Importance of Organizational Rights For An Organization's Access To An Attorney Protected Under the First Amendment Conferring Direct Standing**[2]

61. State interference that keeps an organization from its attorneys violates the organization's First Amendment speech rights, as such associations are essential for collective expression and advocacy. *NAACP v. Button*, 371 U.S. at 428-29 (1963) ("We hold that the activities of the NAACP, its affiliates and legal staff shown on this record are modes of expression and association protected by the First and Fourteenth Amendments which Virginia may not prohibit, under its power to regulate the legal profession, as improper solicitation of legal business violative of [state law] and the Canons of Professional Ethics.").

62. An organization exercises its First Amendment speech solely through agents like attorneys; thus, impairing those agents' ability to speak on its behalf effectively removes the organization's voice. *In re Primus*, 436 U.S. 412, 422 (1978) (recognizing that non-profits speak via attorney-agents, and regulations chilling this agency suppress organizational advocacy).

63. Administrative punishment or license revocation of an organization's attorneys confers standing on the organization, as it directly injures its associational and expressive interests. *Brotherhood of R.R. Trainmen v. Virginia ex rel. Va. State Bar*, 377 U.S. 1, 7 (1964). The Brotherhood case emphatically allows attorneys who work for constitutionally protected endeavors those very same protections. *Id.* at 8 ("And, of course, lawyers accepting employment under this constitutionally protected plan have a like protection which the State cannot abridge.")

[2] The Court wrote in ECF #57 that *Linda R.S.* controls the prior complaint. This Complaint has noted that these cases, coupled with the amendments made, directly demonstrate that the organization has rights to its attorneys for its own speech. Should the Court decide otherwise, then this is being offered by way of showing a clearly appealable issue for the advancement of organizational speech.

64. Public policy demands that organizations have standing to challenge state actions punishing their attorney-agents particularly for their work in assisting the organization, as separating groups from counsel and attacking agents' speech violates core First Amendment protections for collective advocacy. *United Mine Workers v. Ill. State Bar Ass'n*, 389 U.S. 217, 222 (1967) (affirming organizational standing and speech rights when bar discipline impairs agency relationships). United Mine Workers informs the Court precisely what the Defendants are being allowed to get away with thus far:

> "The First Amendment would, however, be a hollow promise if it left government free to destroy or erode its guarantees by indirect restraints so long as no law is passed that prohibits free speech, press, petition, or assembly as such. We have therefore repeatedly held that laws which actually affect the exercise of these vital rights cannot be sustained merely because they were enacted for the purpose of dealing with some evil within the State's legislative competence, or even because the laws do in fact provide a helpful means of dealing with such an evil.

*Id.* (citing *Schneider v. State*, 308 U.S. 147 (1939); *Cantwell v. Connecticut*, 310 U.S. 296 (1940)).

**Defendants Attack Plaintiffs' Executive To Stifle Plaintiffs' Speech**

65. Ultimately, the Defendants are using the following two pieces of Plaintiffs' speech to punish the lawyer who helped them speak it, to discourage lawyers from affiliating with Plaintiffs, and to keep the Plaintiffs from speaking where their speech is criticism of the judiciary:

a. Children of the Court, which seeks nationwide judicial reform posted a website. On its website, it posted a page called "Team." That page published that its "Board of Directors: TBD." It then showed several pictures including Mr. Weinhaus and Judge Wilson. The page listed two words - "Nationwide Enforcer" - under Judge Wilson's picture. It then posted Judge Wilson biographical information with a paragraph-long description culled from public information. The first sentence of that biography stated:

> "Although he sits on a bench in Cook County, Illinois, his order has created a national organization, advocating in every state. Judge Wilson is responsible for enforcing the funding of Children of the Court pursuant to his April 18, 2023 order in Cook County."

b. *ALABnews*, owned by Plaintiff Judiciocracy and the nation's leading publication covering attorney misconduct, published a story entitled "*Breaking: Dastardly Chicago Divorce Attorneys Hurst Robin Kay & Allen Have Own Client Thrown in Jail According to Legal News Journal*." The article included the following statement:

> "In an unprecedented 'slam' on a fellow judge, another Cook County judge and leader the Hon. Thaddeus L. Wilson immediately ordered an organization be started to keep judges like Scannicchio away from cases involving children."

The same article noted Mr. Weinhaus' involvement with the Plaintiff Judiciocracy and that "[Mr. Weinhaus] refused comment."

66. The speech in the above subparagraphs are hereafter referred to as "SPEECH IN QUESTION." The Defendants' Administrative Charge against Plaintiffs' key man for Plaintiffs' legal speech for the purpose of stifling Plaintiffs' speech is found at ECF #13-1, Exhibit A, pp. 1-6.

67. Plaintiffs' executive, Mr. Weinhaus, did not promote his own speech in either instance and the SPEECH IN QUESTION represents the speech of the Plaintiffs only.

68. Mr. Weinhaus' assistance was crucial in helping the organizations speak in both cases and to help create the SPEECH IN QUESTION, he was only fulfilling his duties to the organizations as attorney and officer.

69. Mr. Weinhaus' own speech would have been very different had he been speaking on his own behalf and not on behalf of the Plaintiffs to which he later testified in the SPRINGFIELD STATEMENT.

*Defendants Ability To Directly Interact And Harm Plaintiffs*

70. The Defendants' ability to use coercive power over attorneys who help an organization are amplified when that attorney serves in an executive capacity – especially a *volunteer* capacity following the terms of a third-party agreement. Thus, directly attacking the executive for his functions as an executive is a direct attack on the company's ability to operate and execute its functions.

71. The Defendants have a mechanism for self-limiting their ability to directly attack the client's acts by going after its attorney for advice given to it to help it act legally.

72. For example, Illinois Rule of Professional Conduct 8.4(a) prohibits a lawyer from violating the rules by acting through another, finding it misconduct when an attorney:

> "(a) violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another."

73. Comment 1 to Rule 8.4(a) makes it clear that so long as the client acts legally, the attorney's counsel is protected. **"Paragraph (a), however, does not prohibit a lawyer from advising a client concerning action the client is legally entitled to take"**

74. In this way, the Defendants can use their power to prosecute an attorney for *his/her own wrongful* acts, but not for advising a company that to speak what is perfectly legal.

75. When the Defendants wish to control, influence, harm, threaten, or punish an organization for speech Defendants do not like, Defendants can punish the organization by attacking those it employs decreeing the entity itself not responsible for its own speech and then purposely ascribing those actions to the individual who helped them take those actions.

76. By doing so, the Defendants can ignore Rule 8.4(a), wherein comment 1 forbids the prosecution of an attorney in the present circumstances, for helping the Plaintiffs speak legally, and thus preventing the Plaintiffs' ability to speak.

77. Thus, the Defendants remove their self-restraint on attacking entities from getting legal advice by prosecuting the entities' duty-bound officers and attorneys for the entities' actions not under Rule 8.4(a) but instead for "advising a client concerning action the client is legally entitled to take." ("ATTACK ENTITY'S ABILITY TO ASSOCIATE.") Among other harms, this prevents an organization from associating with attorneys for legal advice or its executives.

78. When the attorney is the chief executive officer of the entity, the Defendants compound the problem by attacking the main person responsible to the entity for making it act through failing to recognize the entity's responsibility to act in its own interest and its duty-bound officers to help it act. ("ATTACK ENTITY'S OFFICERS FOR ENTITY ACTS").

79. By charging an attorney-executive for misconduct for:

a. giving legal advice to an entity;

b. so the entity can perform legal acts;

c. then performing his duty to the entity for doing it; and

d. by refusing to acknowledge the entity is responsible for its own acts,

the Defendants are directly regulating Plaintiffs' acts including stifling their speech by removing the entity's ability to have access to executives and attorneys.

*Defendants Pick Up Pursuit of Plaintiffs' Speech*

80. Absent supporting information from Judge Scannicchio to substantiate each of her false claims, Defendant Tammy Evans was tasked by the ARDC to pursue Mr. Weinhaus to further stifle Plaintiffs' speech because that speech related to the reform of the judiciary.

81. On June 13, 2024, Weinhaus provided a sworn statement in Springfield, Illinois, represented by counsel ("SPRINGFIELD STATEMENT").

82. Just Mr. Weinhaus did during the SPRINGFIELD STATEMENT, Ms. Evans broke down in tears during a break after hearing how Mr. Weinhaus was doing volunteer work for Children of the Court under Judge Wilson's enforcement, who then complained to the ARDC as to how Mr. Weinhaus volunteered, rather than address Mr. Weinhaus directly.

83. Nonetheless, the Defendants, via Ms. Evans addressed the Plaintiffs directly in the only capacity it could, by addressing Mr. Weinhaus acting in his official capacity, which he was doing during the SPRINGFIELD STATEMENT, because the speech involved was only that of the Plaintiffs. Any statement hereafter stating or showing that Defendants addressed Mr. Weinhaus are all qualified by the fact that he was acting in his representative capacity for Plaintiffs at all times and they were directly attacking Plaintiffs in the only manner they could.

84. The Defendants acknowledged that Mr. Weinhaus was acting in the capacity as the agent of the Plaintiffs during the SPRINGFIELD STATEMENT and there being no other way to reach the Plaintiffs, the Defendants elected to directly interact with Plaintiffs to stifle their speech by pressuring their agent in his representative capacity.

85. Ms. Evans on behalf of the Defendants pressured Plaintiffs to stop pursuing judicial reform and pressured Mr. Weinhaus to stop helping Plaintiffs critique the judiciary. The Complaint fully incorporates the June 13, 2024 transcript. ECF #26-1, Exhibit H, pp. 23-150.

86. The following are allegations and citations to the page numbers of the transcript from the SPRINGFIELD STATEMENT[3] [our underlines]:

[3] The Court in ECF #57 suggested that the Defendants had not been alleged to have attacked the Plaintiffs. Clearly, the Supreme Court's jurisprudence in *United Mine Workers* speaks to the obvious and direct way the Defendants attacked Plaintiffs as shown in the transcript.

a. On pages 49 Line 12 – page 50 Line 14, Defendants ARDC and Evans were told of Weinhaus' duties to the *news* process at Judiciocracy LLC's *ALABnews* publication, page 50 Lines 7-14.

**Weinhaus**: It's a news answer. It's not a law answer. It's a news answer.

**ARDC/Evans**: I understand that. But we're here because you're a licensed Illinois attorney. And as a licensed Illinois attorney, you're subject to the Illinois Rules of Professional Conduct. And there are certain rules as an attorney that we have to abide by.

The Defendants acknowledge that Mr. Weinhaus was acting completely within the scope of serving his duties to the entities, afforded the protection of Comment 1 to Rule 8.4(a).

b. On page 74 Lines 9-23, Defendants ARDC/Evans contend that the website in question is an entity's website:

**ARDC/EVANS**: On your website, you include… (line 9)

**ARDC/EVANS**: …that is from your website. Is that correct? (lines 20-21)

**Weinhaus**: It was from Children of the Court's website. (line 22)

**ARDC/Evans**: Okay… (line 23)

The Defendants accept (and cannot show otherwise) that the speech is other than entity speech.

c. On pages 79 line 11 through page 80 line 11 the following exchange occurred where Defendants ARDC and Evans admit that Children Of The Court's work was a group endeavor, not just that of Mr. Weinhaus, who was subject to a court order requiring his voluntary work for the organization:

**Weinhaus**: To be clear, I'm a little upset and I'm sorry if I get emotional, because this was on our website. And I didn't know it upset Judge Wilson. And when it was, both pages have been changed, okay. It linked to the court order that described it in full. And it wasn't meant to be misleading. It was meant to say exactly what his involvement was word for word, which we felt was accurate. This wasn't intended to be misleading but be fully relevant for a normal website

> with a full link to a legal document. When we heard -- I'm sorry -- through [Weinhaus's personal attorney John Gallo] that Judge Wilson had called directly and was upset, I was like, "Well, take his face" -- I mean, we didn't mean to upset anyone. We're trying to thank him. You know, my students and I put this organization together. It's meaningful to us.
>
> **ARDC/Evans**: I understand that.
>
> **Weinhaus**: I don't think you do. And it's not your job to understand. But I'm a real person. I put my life into stuff that matters. I'm not even paid for this. This is volunteer work.
>
> **ARDC/Evans:** I understand that.
>
> **Weinhaus**. Judge Wilson gets me in trouble after I worked for nothing for this…

Party Admission that they understand that the organization is a *group* endeavor (entity speech), and that Weinhaus was following Judge Wilson's court order that he *volunteer* for it pursuant to his duty.

d. Pages 81-89 discuss the letter from Marcia Meis referencing the then version of the Judges page on Children of the Court's website, and including Weinhaus' involvement in the sending of the letter which was referenced EXHIBIT I of the same ECF #26-1. Additionally, that included:

Pg. 84 line 22 through pg. 85 line 1:

> **ARDC/Evans**: But the language states: "Our organization is the recipient of ten years' worth of funding thanks to the order of Cook County Circuit Court judge, the Honorable Thaddeus L. Wilson, in case 2016."

As reference to the Judges page of Children of the Court still shows, this is accurate and entity speech. Defendants are fully aware of this entity speech and have no problem with it pursuant to their investigation and complaint against Mr. Weinhaus. It is directly analogous to the other entity speech for which they are bringing charges and not providing entity speech protection for which this Court is absolutely needed. Also, this

section references a letter provided in discovery by Marcia Meis where she questions the "legitimacy" of the organization. The Defendants chose to believe Marcia Meis' representation of the organization being illegitimate rather than give comity and respect to Judge Wilson's court orders.

e. Pg. 86 line 6 through pg. 88 line 5.

> **ARDC/Evans**: When taken together, the letter to Director Meis, the inclusion of Judge Wilson on the page that lists team, and the court order that we've established is a mix of the settlement agreement, settlement terms, and the actual body of the court order that he signed, Judge Wilson signed, can you see that there might be confusion when he's included as a team member, this portion of the court, or the order, and now this letter with him including at the bottom? Can you see that it might be misleading as to his involvement with your organization?
>
> **Weinhaus**: I just want to say, in my mind, because the words about him under his name were I thought specific, accurate, correct, and without possibility of misconstruing for anyone who actually read what it said. However, if you don't read the words that was said and you just see everything else and you look at it from maybe not a lawyer's view who like reads things, and yeah, someone could say he's leading the charge. Not if they read it. So part of my -- why I'm so upset, you see, I can't be both right and wrong. I was either right in the language I put and made a mistake, which is what I'm emotional about. Or I was wrong. And I wasn't wrong.
>
> **ARDC/Evans**: Here's some Kleenexes. I will say I know you've indicated that a large part of your organization is working with children who are the subject of custody disputes, dissolution proceedings before domestic relations judges, as well as their parents. And when you consider that those individuals may not be lawyers like yourself and I [sic], and they read documents, there is a risk that there might be a misrepresentation and Judge Wilson might have feelings about being included in this. Can you see that?
>
> **Weinhaus**: I do. And I don't discard his feelings. I see how someone could not read -- or not understand the limits that I thought I was specific. And the marketing was maybe too good from a social entrepreneurship perspective of exuberant students and their faculty member who had put the legal protection and thought.

Mr. Weinhaus again "put language" for "put the legal protection" in his legal representative capacity but a judge "might have feelings" even though the language was

correct. Certainly, it was not illegal as an entity has a right to and an attorney to give it that advice. The Defendants have still not been able to explain what was false other than the organization hurt Judge Wilson's *feelings*, they understand that it was: organizational marketing designed for the organization's legal protection. That is, it was Weinhaus performing his duty for the entity for the entity's speech. The full context of the website Defendants tried to discuss at the top is organizational speech. The measurement Defendants place on Judicial Reform-based Plaintiffs and any attorneys who associate with them is that the readers "may not be lawyers." But the constrains them from such a broad reading in every context based on Comment 1 to Rule 8.4(a).

f. On page 97 line 15 through pg. 98 line 4, Defendants ARDC and Evans worked to persuade Plaintiffs' key man from working in the news industry.

> **ARDC/Evans**: What I'm trying to get out of you is: Do you think there are other ways in which you can work toward a better domestic relations division other than having articles published that make statements about sitting judges?
>
> **Atty for Weinhaus**: Are there other ways?
>
> **Weinhaus**: I'm sure there are other ways.

The Defendants' purpose, what they are "trying to get out of Plaintiffs via their key man, is to keep him away from helping produce news stories about sitting judges. Coupled with subparagraph (a)'s excerpt above, this is an attempt to dissuade an attorney from affiliating with the media, judicial reform, and the Plaintiffs in particular because they comment on sitting judges. The Defendants are not trying to fix a 'truthfulness' problem or enforce the law or live within the constraints of the law, they are trying to stop coverage of public officials by attacking their agents, attorneys, and executives as they are doing to Mr. Weinhaus. Let's quote them directly: **"articles published that make**

**statements about sitting judges."** The intent is to stop articles about sitting judges altogether for the licensed attorneys who currently work with Plaintiffs and to dissuade those in the future.

g. On pg. 106 line 14 begins a discussion about the news story and first admits that the statements presumably meet the legal standards of "truthiness":

**ARDC/Evans**: There are statements that, perhaps not to a lawyer, but perhaps to a maybe less sophisticated individual might read that article and might think… there is the possibility that someone might take this all into context… (p. 106 between lines 14 through 22)
…
**Weinhaus**: …the organization is designed to keep judges who don't have children away from cases involving children is a legitimate comment. With the knowledge that she doesn't have or has never been a parent is a legitimate public criticism. All the other stuff I had in there was probably too much inside baseball. We took it out. It wouldn't have been in there. And I'm sorry. We weren't meaning to mislead. It's a news story. (p. 108, lines 11-19)

**ARDC/Evans**: I understand. I think here's the issue. You've already said you have two hats. But you have a lawyer hat. (p. 108, lines 20-22)

**Weinhaus**: Right.

**ARDC/Evans**: And perhaps maybe somebody in your media organization that's a non-attorney, they're not bound by the Illinois Rules of Professional Conduct, but you are. You are bound.

**Weinhaus**: To protect my client. (p. 109, line 4)

**ARDC/Evans**: As a lawyer, you're bound by all of the Illinois Rules of Professional Conduct. (p. 109, lines 5-6)

**Weinhaus**: Right.

**ARDC/Evans**: And the concern is -- I think there's better ways of maybe -- if you don't believe a judge is doing what they should be doing, I think there are better ways than maybe having articles that you're affiliated with. And when I say "affiliated with," you're the publisher -- you said at the time you were the publisher – (p. 109, lines 8-14)

**Weinhaus**: Yes. I still am.

**ARDC/Evans**: -- and you reviewed the article.

**Weinhaus**: I still am the publisher. I'm just not the main owner anymore.

**ARDC/Evans**: I'd just caution you about what the content is. And what someone reading that content might imply from that content. (p. 109, lines 19-21)

**Weinhaus**: I understand. I do get that.

Defendants' approach is evident in this exchange and these serve as party admissions. They are concerned about the News media having an attorney "affiliated with" it helping it speak. They are clearly seeking to disassociate Plaintiffs from their key man, in their third complaint about the news (see Subparagraphs A and F, *supra*). Defendants aren't concerned about recklessly false or false content, but content "what someone reading that content might imply from that content." Defendants admit that "there are better ways of having articles" where an attorney "protects [his] client." Here, they want Weinhaus and any Plaintiffs' attorneys to refuse to protect Plaintiffs' right to speak by punishing them for successfully assisting the Plaintiffs' speech. It is clearly and evidently admission of unconstitutional intent and behavior of restricting free speech, associational rights, and creating a *Hobson's choice* for any attorney who wishes to assist a judicial reform organization, limiting Plaintiffs access to attorneys, legal advice, and rights to associate. Defendants make very clear they only want non-attorneys assisting with judicial reform speech because if its judicial reform speech, then the attorney, like Plaintiffs' current and future attorneys cannot be afforded the protection of Rule 8.4(a) Comment 1.

h. On pg. 111 lines 5-19, the Defendants acknowledge the difference between Plaintiffs' speech and that of their target, who evidently did not speak:

**ARDC/Evans**: I also think, as Mr. Gallo can probably tell you, the Court -- and when I say "the Court," the Supreme Court, does not like when attorneys, you

> know, make comments about sitting judges, about other attorneys, 4.4, that are the sole purpose of burdening, harassing, embarrassing, you know.
>
> **Weinhaus**: Yeah. My comments were worse that got taken out that didn't get published.
>
> **ARDC/Evans**: And that's probably very good and that is good.
>
> **Weinhaus**: I understand the point so well, you don't want to know what I would have written.
>
> **ARDC/Evans**: But don't. Because then you'll be back in front of us again.

Defendants fully understand that the speech is truthful, and that is the speech of the entities. Here, they admit that they don't even want to know what Weinhaus' own speech was, which very well have either been untruthful or harassing. The Defendants weren't of the mind that the speech was harassing in the end once they learned it was organizational speech. However, they opted to proceed to charges and to continue to harass Plaintiffs by attacking their attorney for the Plaintiffs' speech without acknowledging it.

87. The Defendants used their coercive power over the chief executive officer of both organizations to directly regulate Plaintiffs' speech as it related to speaking about judges in a manner the Defendants do not like.

88. The Defendants conducted both: ATTACK ENTITY'S ABILITY TO ASSOCIATE and ATTACK ENTITY'S OFFICERS FOR ENTITY ACTS.

89. Ms. Evans on behalf of the Defendants also threatened Mr. Weinhaus' former attorney Mr. Cleys for demonstrating that the ARDC was being used in a political manner in contravention of the First Amendment.

90. Ms. Evans on behalf of the Defendants thus not only threaten and punish executives and lawyers who help Plaintiffs critique the judiciary, but also threatened those targeted attorneys' own counsel.

*Defendants Admit The SPEECH IN QUESTION Is the Plaintiffs' Speech*

91. Defendants Evans and the ARDC admitted that the SPEECH IN QUESTION was that of the Plaintiffs and not that of Mr. Weinhaus in myriad ways including:

a. During the deposition admitting that the SPEECH IN QUESTION was that of the Plaintiffs and that Mr. Weinhaus had a duty to the Plaintiffs;

b. Providing no evidence prior to prosecuting Mr. Weinhaus that the SPEECH IN QUESTION was his own;

c. Providing a charge against Mr. Weinhaus that includes a factual basis regarding the SPEECH IN QUESTION that can only be deemed that of the Plaintiffs and acknowledged Mr. Weinhaus' duty to the Plaintiffs;

d. Responding to discovery in the underlying enforcement action subsequent to the original complaint that they have no evidence to show that the SPEECH IN QUESTION was not that of the Plaintiffs;

e. Responding to discovery in the underlying enforcement action subsequent to the original complaint that they have no evidence to show that the SPEECH IN QUESTION was that of Mr. Weinhaus;

f. Hiding from their charge complaint that the *ALABnews* piece specifically mentioned that Mr. Weinhaus "refused comment" to delineate what they uncovered in the SPRINGFIELD STATEMENT – the SPEECH IN QUESTION is entity speech.

92. The controlling authority of each Plaintiff contends that the SPEECH IN QUESTION is organizational speech of the Plaintiffs and never that of Mr. Weinhaus.

93. This Court also has as a matter of record Mr. Weinhaus' sworn testimony in the underlying enforcement action, the SPRINGFIELD STATEMENT, demonstrating that the SPEECH IN QUESTION is organizational speech of the Plaintiffs and not that of Mr. Weinhaus.

94. The investigation and charges are being pursued to punish Plaintiffs for Plaintiffs' speech on their websites because their key man, Mr. Weinhaus, was also an attorney who is under their watchful eye. But the ARDC and Scannicchio earlier by default acknowledged that *no allegations have been tendered against Weinhaus*:

a. That Weinhaus' work assisting the Plaintiffs' speech was in the practice of law or for his behavior during any case or for criticism of a judge before whom he had an active case;
b. For a crime;
c. For even a tort;
d. For anything other than assisting the Plaintiffs in pursuit of *their respective chartered missions*.
e. For violating his duties to the organizations, but rather for exactly tending to those duties.

95. Defendants are pursuing Mr. Weinhaus under his roles as officer and in the operations of the Plaintiffs to frustrate Plaintiffs' pursuits of judicial reform.

*Defendants' Speech-Chilling Acts*

96. Eight months after the SPRINGFIELD STATEMENT, mid-February 2025, Judiciocracy resumed its investigation into charges of lawyer-judge bribery in Cook County Courts, after those allegations began appearing in several federal lawsuits. Plaintiffs fear of being scooped seemed more realistic than the Defendants' continued pursuit of their key man.

97. Not having heard anything from the ARDC in those eight months, Judiciocracy instructed Weinhaus to verify certain accusations based on public records, additional court records provided to Judiciocracy after Chief Judge Evans' fee waiver, and traditional reporting techniques.

98. In response, 8.5 months after the SPRINGFIELD STATEMENT with no new information or accusations, the ARDC announced that it sought to start the process to bring an official charge against Weinhaus ("CHARGE PURSUIT") for the purpose of stifling the speech and activities of the Plaintiffs.

99. Upon learning of the CHARGE PURSUIT, Plaintiffs were unable to indemnify Weinhaus due to lack of resources and which immediately caused Plaintiffs to be unable to perform the report and judicial reform work they do resulting in a harm to the organizations and Judiciocracy's publications.

100. Due to Weinhaus' decades of experience and deep familiarity with the topic, any replacement or even complement would be prohibitively expensive and impossible based on the Defendants' intent to punish any attorney who wished to help the Plaintiffs' judicial reform missions.

101. Likewise, Children of the Court could no longer send its letter campaigns which had previously yielded positive results, such as the interaction and interview with Judge William Stewart Boyd.

102. The only reason *more* letters have not gone out is due to the chilling effect of the Defendants' pursuit of Children of the Court's *volunteer* Executive Director and its threat to do so as evidenced above against any future attorneys who assist it with Judicial Reform.

103. Each Plaintiff is now faced with an officer and director who is unable to perform his duties for either entity because the Defendants refuse to recognize the entities' legitimacy and existence to afford their staff the benefit of Illinois law – that is Comment 1 to Rule 8.4(a).

104. Recently, Judiciocracy had to pay a European journalist with British certification as an outside consultant and have a separate member publish the story, instead of Mr. Weinhaus, due to the speech-chilling actions of the Defendants.

105. In fact, Plaintiffs have lost access to their own executive, attorney, officer and director on key decisions, including but not limited to instituting this lawsuit as a result of Defendants actions.

*Loss of Access to An Attorney Is Significantly Speech-Curtailing*

106. Weinhaus is an international judicial reform advocate.

107. Due to his public interest litigation and work with the Plaintiffs he has become nationally recognized as among America's most aggressive judicial reformers.

108. The Defendants actions did not just affect Weinhaus but instead have prevented Plaintiffs from hiring any attorney to perform the function Weinhaus served.

109. The Plaintiffs are able, only after expense, to find an attorney to stand before this Court upon whose measured judgment counsel relies, while complying with the ethical rules.

110. However, the Plaintiffs would have been able to have Weinhaus stand before the Court for less cost and of like-service if not for the Defendants' actions.

111. In fact, the Defendants have even used these proceedings to threaten Weinhaus with further sanction through their regular use of "aggravating factors" by declaring that Weinhaus was trying to make an "end run around his disciplinary proceedings." ECF #21 at pg. 15.

112. Nothing could be further from the truth as Plaintiffs argued many times on the Court's docket that the Defendants can and should proceed against Mr. Weinhaus for violations of the rules of ethics, but not for following them by fulfilling his duties to his clients which he is required to do.

113. That's the debilitating part of the Defendants' actions for any organization whose speech they don't like – they can just create a *Hobson's choice* for an attorney as they are doing to the Plaintiffs – effectively arguing that if an attorney for Plaintiffs 'Legally fulfills his/her duty to help Plaintiffs publish Judicial Reform content and they attorney will be punished.'

114. That behavior explains why no attorneys will help the Plaintiffs speak further and are causing the limitation of its activities.

115. Plaintiffs' inability to have an attorney help it speak in the media is limiting its coverage and exposing it to significant legal risk while increasing its costs.

116. The Plaintiffs have searched and found no attorneys willing to perform the role Weinhaus filled precisely because the risk from the Defendants' speech chilling behavior was so certain to repeat itself and as such the Plaintiffs' businesses has lost opportunities to speak, advertising revenue, and had to pay third parties to less successfully fill the role and with lesser experience than an attorney would have.

117. Thus, the loss of access to their key man's efforts via the Defendants' actions have and would continue to cause irreparable damage to the important missions of the Plaintiffs.

118. As a direct result of Defendants' broad overreach into trying to regulate the speech and actions of the Plaintiffs, their speech has been curtailed; each Plaintiff has been forced to limit its actions, chilling their speech and frustrating their purpose.

119. Each Plaintiff has been prevented from associating with an attorney to serve in the capacity their key man once filled in its publishing operations.

120. Each Plaintiff has the right to have an attorney bound by the ethical rules of professional conduct to serve it for its publishing operations where the only purported violation of its attorney serving in that capacity is helping the Plaintiffs speak legally.

121. The loss of ability to have an attorney serve in that capacity is a severe restriction on the Plaintiffs' right to speak and associate with attorneys.

122. Absent relief prohibiting the ARDC from proscribing *Plaintiffs' SPEECH IN QUESTION*, to Weinhaus absent the protection of Comment 1 to Rule 8.4(a), Plaintiffs will be prevented from their judicial reform activities, the organizations' voices will be muted, and their missions mooted.

123. As such, the Defendants should be enjoined from using the SPEECH IN QUESTION of the Plaintiffs to attack anyone who owes the Plaintiffs a duty absent a finding that the SPEECH IN QUESTION is illegal.

124. The Defendants' "long leash" of state authority cannot extend inside organizations having nothing to do with the practice of law, especially those that advocate for judicial reform.

*Damages*

125. The Plaintiffs have suffered financial damages from the ARDC's wrongful actions.

126. Judiciocracy LLC has suffered at least the following losses:

a. Diminished competitive edge and journalistic output due to being scooped by competitors on critical stories about jailing divorce litigants unable to pay attorneys. Halted groundbreaking coverage on lawyer-judge bribery allegations in county circuit court, impairing mission to expose judicial incompetence, overreach, and corruption;
b. Inability to publish stories without necessary legal expertise for liability navigation, creating existential risk and immediate harm through delayed or abandoned publications;

c. Chilled overall speech, preventing full publication until judicial intervention.
d. Loss of ability to publish valid criticism of attorney disciplinary commissions, judiciary, and legal system for the public;
e. Irreparable damage from restricted speech and operational freedom;
f. Indirect control by regulatory body which is advocating direct control by attacking its executive;
g. Defendants successfully pressured Plaintiff's key man to violate his duties to Plaintiff; and
h. Diminished integrity and lowered public benefit.

127. Children of the Court has suffered at least the following losses:

a. Inability to send letters with attorney operating review or fully operate, creating existential risk to advocacy for intelligent case assignment and child participation in court improvements;
b. Impaired governance and operational continuity due to investigation impacts;
c. Denied reliable access to attorneys for work, limiting legal counsel beyond silence advice;
d. Forced breaches of settlement agreements in spirit, restricting core focus on publishing and speech;
e. Defendants successfully pressured Plaintiff's key man to violate his duties to Plaintiff; and
f. Diminished integrity and lowered public benefit.

*The Constitutional Precedent Is Certain*

128. The Supreme Court of the United States makes clear that even an attorney's rights to criticize judicial processes or public officials is sacrosanct, unless there is a pending case (or attorney advertisement)[4].

"In *Gentile v. State Bar of Nevada*, 501 U.S. 1030 (1991), the Court was asked to determine whether Nevada's prohibition on extrajudicial statements was constitutional. After reviewing the history of professional obligations imposed on attorneys, Chief Justice Rehnquist quoted from two cases that discussed the tension between a lawyer's First Amendment rights and his duty to preserve the fairness of the trial:

> **"Of course, a lawyer is a person and he too has a constitutional freedom of utterance and may exercise it to castigate courts and their administration of justice. But a lawyer actively participating in a trial, particularly an**

[4] The Plaintiffs appreciate the Court acknowledging *Gentile* in its dismissal order, however, it supports Plaintiffs case, not the other way around. The only reason the Defendants can attack Weinhaus for *his* out-of-courtroom statements would be in the context of litigation or attorney advertising. However, here they are going after the speech of the Plaintiffs, attributing it to Weinhaus and ignoring *Gentile*! This court can stop the first wrong alone.

> **emotionally charged criminal prosecution, is not merely a person and not even merely a lawyer….**
>
> **He is an intimate and trusted and essential part of the machinery of justice, an 'officer of the court' in the most compelling sense."**

*Gentile*, 501 U.S. at 1072 (quoting Justice Frankfurter's dissent in *In re Sawyer*, 360 U.S. 622, 666, 668 (1959))." *Devine v. Robinson*, 131 F. Supp. 2d 963, 964-965, (N.D. Ill. 2001)

129. There is no question the ARDC has regulatory power over Weinhaus for Weinhaus' conduct as an *attorney* and his actions as such, and particularly where he is an attorney involved in an active case. *Id. Or helping Plaintiffs conduct illegal speech.* But now Defendants believe they can reach into the Plaintiffs' operations to punish an attorney with no case pending, with no marketing of attorney services, without any illegal speech, and punish the entities' staff for helping the Plaintiffs' speak legally about judges.

130. The Plaintiffs relied on Constitutional protections before and during their formation to engage their key man and pursue their missions.

131. The Defendants are only attacking the staff of the Plaintiffs because of the *Plaintiffs' speech* – their criticism of various judicial actions, the injustices that followed, or pursuit of reform.

132. As evidence of Defendants' continued bad faith including the above:

a. no person either tangentially or directly – whether the Defendants, Judge Scannicchio, Judge Wilson, or any attorneys – have reached out to Plaintiffs to correct even a single error in what is fully truthful and protected speech. Judge Hall's behavior serves as guidance – she asked for coverage about updated and truthful information; she received it;

b. Defendants have failed in discovery to produce any evidence that the SPEECH IN QUESTION wasn't that of the Plaintiffs and have provided no witnesses who can do so either; and

c. Defendants have made no claim that the SPEECH IN QUESTION is illegal, because its very legal.

133. The Defendants bad faith is also evident on the face of their Complaint and from their admissions during the SPRINGFIELD STATEMENT.

134. The Defendants case is based on Plaintiffs calling a page on their website "TEAM" and then print (and applaud) the consequence of orders of the Court.

135. Being an attack dog for thin-skinned elected officials to stifle Judicial Reform speech is the consummate overreach of state authority that requires the federal court's jurisdiction and protection.

136. There is no property or *in rem* jurisdiction to award to anyone that a state could handle – this is state authority over-reach over First Amendment rights to associate and speak for which the federal courts have a crucial role play.

137. Plaintiffs have no state remedy in that they cannot participate in the Defendants' case against their key man.

138. Plaintiffs and Mr. Weinhaus have divergent interests.

139. Mr. Weinhaus cannot adequately represent the interests of the Plaintiffs in his state proceeding.

140. Mr. Weinhaus' entire successful legal career in which he invested heavily as a late-stage career move is based on his law license.

141. Mr. Weinhaus could and should and likely will sacrifice the interests of the Plaintiffs who have other rights, such as the rights to future access to attorneys whose speech is clearly threatened.

142. Mr. Weinhaus has already sacrificed his duties to the Plaintiffs as a result of the actions of Defendants and will continue to do so until the Plaintiffs' speech is considered their own.

143. In no manner can the Plaintiffs protect their own rights other than in this Court, particularly due to the involvement of the Illinois Supreme Court in the action against Plaintiffs' speech, invoked by the Defendants in the SPRINGFIELD STATEMENT and by their other arm which Ms. Meis runs – who claimed Plaintiffs are not "legitimate."

144. Plaintiffs' speech is about the legal profession and the justice system and requires an active participant in the justice system who lives by and understands its rules to truly help reform the system.

145. But even if it didn't, Defendants have power over Plaintiffs' speech through the actions described above that limit its ability to have an attorney work in an operating capacity and Defendants have power over Plaintiffs' ability to get legal advice through the actions described above.

146. Defendants are abridging Plaintiffs' rights by employing both ATTACK ENTITY'S ABILITY TO ASSOCIATE and ATTACK ENTITY'S OFFICERS FOR ENTITY ACTS, by directly attacking its attorneys, now and threatening the future ones for the speech of the entities.

147. As both being arms of the Illinois Supreme Court and the actions above, Marcia Meis' AOIC and the Defendants are acting to purposely over-extend their power to protect sitting judges from fair, truthful, judicial reform speech, and acting like the entities do not exist.

148. Judicial Reform speech deserves extra protection, not the other way around, as the Defendants contend, as part of their pattern of bad faith acts.

149. Mr. Weinhaus' temporary cessation of activities was based on the looming threat of persecution by Defendants and that threat came to bear.

150. Mr. Weinhaus' resumption of his activities for Plaintiffs was met with swift response from Defendants and the implementation of the CHARGE PURSUIT.

151. If the Defendants were to provide the declaratory and/or injunctive relief requested herein, Mr. Weinhaus would return in full capacity to the Plaintiffs and the Plaintiffs would be able to attract other attorneys and executives currently chilled from assisting Plaintiffs.

152. The intent of the Defendants is to directly stop the speech of the Plaintiffs.

153. Defendants are attacking and will continue to attack the Plaintiffs' speech sounding in judicial reform against "sitting judges" unless stopped by this Court of their Constitutional overreach.

154. Therefore, Plaintiffs move for damages and for declaratory and equitable relief.

**COUNT I**

**Violation of Plaintiffs' First Amendment Rights**

155. Plaintiffs incorporate the above paragraphs by reference as if fully set forth herein.

156. Defendants, acting under color of state law, deprived Plaintiffs of their rights under the First Amendment to the United States Constitution by pursuing their Director and Officer Weinhaus for the speech of the Plaintiffs because he is an attorney.

157. Defendants' actions have severely curtailed Plaintiffs' speech and limit their ability to function.

158. There is nothing speculative or hypothetical about the Defendants' actions towards Plaintiffs. Defendants have conceded that their actions are exclusively for the speech of the

Plaintiffs by including only Plaintiffs' SPEECH IN QUESTION in their charges against an attorney without affording the attorney the protection of the same rules.

159. That is, the attorney was required by duty to advise the Plaintiffs to make the SPEECH IN QUESTION, the SPEECH IN QUESTION was legal and / or there is no claim that it was not legal, and the attorney is only being attacked because the SPEECH IN QUESTION relates to Plaintiffs' pursuit of Judicial Reform which the Defendants seek to stop.

160. Thus, the Plaintiffs and Defendants are adverse.

161. Defendants have interfered with Plaintiffs' ability to have its Officer and Director fulfill his fiduciary duties.

162. Defendants have caused Plaintiffs to expend significant resources to defend their rights, caused Plaintiffs damages through necessitated altered their activities, have stifled and chilled Plaintiffs speech.

163. Defendants have caused a chilling on effect on Plaintiffs' speech and operations.

164. The injuries described herein are a direct result of Defendants' conduct towards Plaintiffs – particularly refusing to recognize their own rights to speak by attributing Plaintiffs' speech to Weinhaus for the purpose of chilling and stopping it.

165. The Defendants' complaint against Plaintiffs SPEECH IN QUESTION by targeting their attorney flagrantly and patently violative of express constitutional prohibitions.

166. Defendants' attacks against legal Judicial Reform speech is a process they can and will repeat again and again even were they to feign dropping it "for now" which they have not done because creating the expense for Plaintiffs and their key man is part of the chilling effect of the rights-violating actions.

167. The Court's decision to grant relief would immediately grant redress because it would allow the Plaintiffs' attorneys – now and in the future – to be spared liability for helping the Plaintiffs speak up in matters of Judicial Reform without risk of their careers at the hands of the Defendants.

168. The SPEECH IN QUESTION and other speech that can in the future to be shown to be that of the Plaintiffs as easily as the SPEECH IN QUESTION is protected as legal speech and the Plaintiffs have the right to an attorney to advise them as such without the attorneys being prevented from practicing in the future or threatened similarly.

169. The speech of the Plaintiffs is important and in the public interest as evidenced by the Defendants' own negligence in doing their duty in finding actual infractions under those to whom they cater such as in the same news article about Plaintiffs' SPEECH IN QUESTION, the offending attorney Brian Jason Hurst represented a man he had thrown in jail and in the same proceeding represented his adversary in direct violation of Rule 1.9.

170. Disclosing the Defendants' malfeasance in that matter requires work and exposure of the Illinois Supreme Court-run Defendants who have stifled the full coverage of it by attacking Plaintiffs' SPEECH IN QUESTION.

171. Defendants have offered the protection of entity speech to similar speech to the SPEECH IN QUESTION when the topic was not Judicial Reform. Defendants have selectively chosen to ignore the limitations on their own authority because the speech involved was related to Judicial Reform and as such this is selective prosecution to stifle speech about public officials and judges made by an entity to punish the entity the only way it can – by attacking its lawyer.

172. Defendants have violated and will continue to violate 42 U.S.C. § 1983 when, as persons acting under the color of Illinois law deprived Plaintiffs of their rights and privileges as secured by the Constitution of the United States of America absent action of this court.

173. Plaintiffs have actively searched for an operating attorney/executive/director replacement, speaking to attorneys in court or at conference meetings, attorney social gatherings, and sending out emails to attorneys most familiar with the organization marketing the benefits of the roles but have been unable to find even one attorney interested in fulfilling the duties formerly performed (and still owed) by its key man.

174. But for the actions of the Defendants and their continued risk of being repeated, Plaintiffs would be able to exercise its full First Amendment rights that are currently being chilled and would have the duties owed them fulfilled.

## PRAYER FOR RELIEF

**Wherefore**, Plaintiffs respectfully request that this Court:

a. Enter a judgment declaring that Defendants' actions violated Plaintiffs' rights under the First and Fourteenth Amendments to the U.S. Constitution;

b. Declaring that that the SPEECH IN QUESTION is that of the Plaintiffs;

c. Enjoining the Defendants from removing protections of the Illinois Rules of Professional Conduct for Plaintiffs' attorneys for advising its clients and in no way barring the Defendants from pursuing Plaintiffs' attorneys for advising Plaintiffs illegally – such as embodied in Rule 8.4(a) Comment 1;

d. Issue an injunction preventing Defendants from engaging in further unconstitutional conduct by attacking attorneys who advise organizations who conduct Judicial Reform;

e. Award Plaintiffs compensatory damages;

f. Award Plaintiffs punitive damages;

g. Award Plaintiffs reasonable attorney's fees and costs under 42 U.S.C. § 1988; and

h. Grant any and all such further relief as this Court deems just and proper under equity or law.

**DEMAND FOR JURY TRIAL**

Plaintiffs respectfully demand a trial by jury on all issues so triable.

Dated: January 14, 2026

Respectfully Submitted:

*s/ Antonio Valiente*
Antonio Ernesto Valiente-Rivera
N.D. Ill. Gen. Bar No.: 12326 2
TORRE DE LA REINA - SUITE 203
450 AVENIDA DE LA CONSTITUCION
SAN JUAN, PR 00901
Tel: (787) 782-9544
Email: lcdoavaliente@live.com

**CERTIFICATE OF SERVICE**

I, Antonio Ernesto Valiente-Rivera, do hereby certify that I have caused to be sent to Defendants who have appeared by counsel through the Courts efiling system.

*s/ Antonio Valiente*
Antonio Ernesto Valiente-Rivera
N.D. Ill. Gen. Bar No.: 12326
TORRE DE LA REINA - SUITE 203
450 AVENIDA DE LA CONSTITUCION
SAN JUAN, PR 00901
Tel: (787) 782-9544
Email: lcdoavaliente@live.com

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| CHILDREN OF THE COURT and JUDICIOCRACY LLC,<br><br>Plaintiffs,<br><br>v.<br><br>ILLINOIS ATTORNEY REGISTRATION AND DISCIPLINARY COMMISSION, LEA S. GUTIERREZ, and TAMMY EVANS, in their official capacities,<br><br>Defendants. | ) | No. 25-cv-3387<br><br>Judge April M. Perry |

**<u>OPINION AND ORDER</u>**

Children of the Court and Judiciocracy LLC (collectively, "Plaintiffs") bring this lawsuit against the Illinois Attorney Registration and Disciplinary Commission ("ARDC"), and its employees Lea S. Gutierrez and Tammy Evans (collectively, "Defendants"). Doc. 59. In the first amended complaint, Plaintiffs allege that Defendants interfered with Plaintiffs' free speech rights and ability to access legal counsel by bringing disciplinary charges against Illinois attorney Edward Weinhaus. *See id*. at 1. As such, Plaintiffs assert a single claim under 42 U.S.C. § 1983 for violation of their First Amendment rights. *Id*. ¶¶ 155-174. Defendants now move for the second time to dismiss under Federal Rule of Civil Procedure 12(b)(1), arguing a lack of standing, and, in the alternative, ask the Court to abstain from adjudicating the matter based on the ongoing disciplinary proceedings. Doc. 61. For the reasons set forth below, Defendants' motion to dismiss is granted.

**BACKGROUND**[1]

Children of the Court is a Missouri non-profit corporation that works with adult children of divorce and advocates for the assignment of parental rights cases to judges who have been parents or foster parents. Doc. 59 ¶¶ 1, 19. Parents can sign the "Children of the Court Pledge" to become members and receive assistance from the organization once their children are adults. *Id.* ¶ 35.

Children of the Court was founded in 2023 by students in a social entrepreneurship class at UCLA and their professor, Illinois lawyer Edward Weinhaus. *Id.* ¶ 16. The funding for Children of the Court came from an unrelated case between Weinhaus and a third party, which was settled before Judge Thaddeus L. Wilson. *Id.* ¶¶ 23-24. Under the terms of the settlement agreement, Children of the Court would receive $10,000 per year for ten years. *Id.* ¶ 25. However, as a condition of this settlement Weinhaus could not receive compensation from Children of the Court; he therefore acts as the volunteer Executive Director. *Id.* ¶¶ 25, 32, 102. The organization is otherwise comprised of a four-member board and an operations manager. *Id.* ¶ 34.

Judiciocracy LLC is a Missouri limited liability company that Weinhaus founded in 2023. *Id.* ¶¶ 2, 38, 40. Weinhaus created Judiciocracy as a media company in an effort to "protect both his legal practice and the publication." *Id.* ¶ 39. Weinhaus later sold a majority interest in Judiciocracy but remains a member of the LLC and has continued to serve as

[1] The following facts are drawn from the allegations in Plaintiffs' first amended complaint, which for the purposes of this motion the Court accepts as true, drawing all reasonable inferences in Plaintiffs' favor. *See Killingsworth v. HSBC Bank Nev.*, 507 F.3d 614, 618 (7th Cir. 2007). The Court also considers public records which are referenced in the first amended complaint or of which the parties have requested the Court to take judicial notice. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (holding that when deciding a motion to dismiss, courts may consider "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.").

Judiciocracy's CEO. *Id.* ¶¶ 42, 49. The company controls a number of publications, including *ALABnews* and *AbusiveDiscretion*. *Id.* ¶ 41.

On January 5, 2024, Judge Regina A. Scannicchio, a Circuit Judge in Cook County, informed the ARDC of purported "false and inaccurate" statements made by Weinhaus in an *ALABnews* article and on the Children of the Court website. Doc. 26-1 at 2.[2] Thereafter, Tammy Evans, Senior Legal Counsel for the ARDC, was assigned to the matter and met with Weinhaus who provided a sworn statement. Doc. 59 ¶¶ 7, 81. Eight and a half months later, the ARDC announced that it had started the process of bringing charges against Weinhaus. *Id.* ¶ 98. Because Plaintiffs lacked resources to indemnify Weinhaus, he immediately ceased his reporting and judicial reform work with them. *Id.* ¶ 99.

In its disciplinary complaint, the ARDC alleged that Weinhaus caused a website to be created for Children of the Court that included a webpage entitled "Team" on which he posted a picture of Judge Wilson above the term "Nationwide Enforcer" and a biography that read:

> Although he sits on a bench in Cook County, Illinois, his order has created a national organization, advocating in every state. Judge Wilson is responsible for enforcing the funding of Children of the Court pursuant to his April 18, 2023 order in Cook County.

Doc. 13-1 at 3-4.[3] According to the ARDC complaint, Weinhaus caused this statement to be posted on the Children of the Court website with knowledge of the statement's falsity in violation of Illinois Rule of Professional Conduct 8.2(a) (forbidding lawyers from making false statements or statements with reckless disregard to truth or falsity concerning the qualifications

[2] The Court takes judicial notice of Judge Scannicchio's statement regarding Weinhaus, Doc. 26-1, as incorporated in the first amended complaint, *see* Doc. 59 ¶ 52, while not accepting the truth of any of the allegations therein.

[3] The Court also takes judicial notice of the ARDC complaint, Doc. 13-1, as incorporated in the first amended complaint, Doc. 59 ¶ 66, while not accepting the truth of any of its allegations.

or integrity of a judge) and Rule 8.4(c) (forbidding lawyers from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation). *Id.* at 5-6.

The ARDC's complaint also alleged that Weinhaus caused an article to be posted on the *ALABnews* website that included the following statement:

> In an unprecedented "slam" on a fellow judge, another Cook County judge and leader the Hon. Thaddeus L. Wilson immediately ordered an organization be started to keep judges like [Judge Regina] Scannicchio away from cases involving children.

*Id*. at 4. The ARDC claimed that this statement violated Weinhaus's duties under Illinois Rules of Professional Conduct 8.2(a) and 8.4(c) because Judge Wilson did not order such organization to be started, nor did Judge Wilson order any organization to take action against Judge Scannicchio. *Id*. at 5-6.

Plaintiffs allege that the ARDC brought charges against Weinhaus in an effort to mount a "direct attack" on them "for the purpose of stifling [their] speech and activities," Doc. 59 ¶¶ 70, 98, and as a result, Defendants have successfully interfered with Plaintiffs' ability to continue operating. *See, e.g.*, *id*. ¶¶ 68, 121, 163. Plaintiffs therefore seek monetary damages and declaratory and injunctive relief preventing Defendants from "engaging in … unconstitutional conduct" against them via the attorney discipline process. *See id*. at 37-38.

**ANALYSIS**

Despite substantial revisions, including adding more than twenty pages of text, the first amended complaint contains many of the same deficiencies identified in the Court's opinion of December 10, 2025 (the "December 10 Opinion") which granted Defendants' first motion to

dismiss. Doc. 57. The Court therefore incorporates the reasoning of the December 10 Opinion herein and highlights the new and persisting issues with Plaintiffs' claim.

**I. Article III Standing**

The Court begins with standing, which "is a threshold question in every federal case because if the litigants do not have standing to raise their claims the court is without authority to consider the merits of the action." *Meyers v. Nicolet Rest. of De Pere, LLC*, 843 F.3d 724, 726 (7th Cir. 2016). When a defendant brings a 12(b)(1) motion arguing a lack of standing, "the district court must accept as true all material allegations of the complaint, drawing all reasonable inferences therefrom in the plaintiff's favor, unless standing is challenged as a factual matter." *Remijas v. Neiman Marcus Group, LLC*, 794 F.3d 688, 691 (7th Cir. 2015). To establish standing, a plaintiff must plausibly allege (1) a concrete and particularized injury in fact; (2) that is traceable to the defendant's conduct; and (3) that is likely to be redressed by judicial relief. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). Standing is jurisdictional, and without standing the case must be dismissed. *See United States v. Hays*, 515 U.S. 737, 742 (1995). Here, Defendants argue that Plaintiffs lack standing because they do not have a legally cognizable interest in the prosecution of Weinhaus and have otherwise failed to demonstrate any concrete injury to themselves. For the following reasons, the Court agrees.

Not every injury is sufficient to confer standing. *See Aurora Loan Servs., Inc. v. Craddieth*, 442 F.3d 1018, 1024 (7th Cir. 2006). "The alleged injury must be legally and judicially cognizable. This requires, among other things, that the plaintiff have suffered an invasion of a legally protected interest." *Id.* (internal quotations omitted). For that reason, even if someone purports to be injured by a government's enforcement action (or lack of enforcement action) "a private citizen lacks a judicially cognizable interest in the prosecution or

nonprosecution of another." *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973);[4] *see also United States v. Texas*, 599 U.S. 670, 678 (2023) ("[F]or standing purposes, the absence of coercive power over the plaintiff makes a difference: When a plaintiff's asserted injury arises from the government's allegedly unlawful regulation (or lack of regulation) of someone else, much more is needed to establish standing.") (internal quotations omitted). The exception to this rule is narrow and permits a third party claim only if the third party can show a close relationship to the first party and some obstacle to the first party's ability to protect their own interest. *Massey v. Wheeler*, 221 F.3d 1030, 1035 (7th Cir. 2000).

Plaintiffs argue that they were directly injured by Defendants' actions, and that they meet the third-party exception, in part, because Weinhaus is unable to protect their interests due to the disciplinary charges against him. *See* Doc. 65 at 7. As to their direct injuries, Plaintiffs allege a host of damages, including: (1) diminished journalistic output at Judiciocracy; (2) loss of access to their attorney;[5] and (3) the inability of Children of the Court to fully operate or continue a

---

[4] Plaintiffs argue that *Linda R.S.* is not applicable to this case because they do not seek to compel or direct a prosecution but rather to vindicate their own constitutional rights. Doc. 65 at 4. However, *Linda R.S.* explicitly states that private citizens do not have a cognizable interest in the prosecution *or nonprosecution* of another, and Plaintiffs' entire theory of harm is linked to Defendants' prosecution of Weinhaus. Therefore, *Linda R.S.* is both relevant and binding authority.

[5] Plaintiffs make the related argument that, in addition to Weinhaus, they have been denied access to legal counsel because Defendants' prosecution of Weinhaus has made it difficult to find a "replacement attorney." Doc. 65 at 6. The Court finds this far too speculative. *See Lanahan v. Cnty. of Cook*, 41 F.4th 854, 862 (7th Cir. 2022) (noting that courts need not accept "sheer speculation, bald assertions, and unsupported conclusory statements on a motion to dismiss") (internal quotations omitted). Plaintiffs have not alleged any facts that would support an inference that Defendants' prosecution of Weinhaus is the reason why Plaintiffs have been unable to find another attorney interested in joining their team. *See* Doc. 59 ¶¶ 173-74. If anything, given that Weinhaus was working for free and Children of the Court's operating budget is $10,000 per year, it seems more likely that financial constraints are the problem. Plaintiffs allege (without any factual support) that Defendants made threats against another attorney, Ryan Cleys, but he was Weinhaus's attorney, not Plaintiffs' attorney. *Id.* ¶ 89. It is the prerogative of private attorneys to choose their clients and determine if they can do so within the bounds of their professional obligations. Any impact that Defendants' actions may have on Plaintiffs' talent pool is far too attenuated to qualify as an injury for standing. Moreover, Plaintiffs do not need an attorney to do the things that they complain about being unable to do – news reporting and "judicial reform work" via letter campaigns. *Id.*

letter-writing campaign. *See* Doc. 59 ¶¶ 125-27. However, even if Plaintiffs have been impacted by the ARDC's prosecution of Weinhaus, none of these allegations rise to the level of a legally cognizable injury.

As explained in the December 10 Opinion, the legally protected interests at issue here belong solely to Weinhaus. *See Swanson v. City of Chetek*, 719 F.3d 780, 783 (7th Cir. 2013) (holding that person who lived with an individual who was subject to city prosecution in municipal court did not have standing to sue the city on the basis of the prosecution). It has been well-established that the ARDC is a professional regulatory body with no power over Plaintiffs, including the ability to discipline or regulate their speech. Plaintiffs concede that "[n]obody has ever claimed [their] speech was illegal," and they are not under the ARDC's jurisdiction. *See* Doc. 59 ¶¶ 60, 83. In an effort to sidestep this fact, Plaintiffs cite a number of Supreme Court cases which state that organizations speak through their agents. *See id*. ¶¶ 61-64. Plaintiffs then argue that any impairment of those agents' ability to speak on behalf of the organization improperly keeps that organization from their attorney and is a direct injury to their First Amendment rights. *Id*. ¶ 62. The Court is not persuaded.

As a preliminary matter, the Court notes that ¾ of the cases cited by Plaintiffs involved the plaintiffs themselves being enjoined or otherwise targeted via suit. *See Bhd. of R. R. Trainmen v. Virginia ex rel. Va. State Bar*, 377 U.S. 1, 2 (1964); *United Mine Workers of Am., Dist. 12 v. Illinois State Bar Ass'n*, 389 U.S. 217, 218 (1967); *In re Primus*, 436 U.S. 412, 414-16 (1978). In other words, none of these cases involved any question of standing. They are therefore irrelevant here. The remaining case, *National Association for Advancement of Colored People v.*

---

¶¶ 99, 101. Some of Chicago's most influential judicial reform organizations have non-lawyers as Executive Directors. *See, e.g.*, Chicago Appleseed Center for Fair Courts, https://www.chicagoappleseed.org/about-us/our-staff/#rachel-lyons; Restore Justice, https://www.restorejustice.org/about-us/our-team/; Illinois Justice Project, https://iljp.org/about/.

*Button*, 371 U.S. 415, 428 (1963), did address standing. In *Button*, the Supreme Court found that the NAACP had standing to challenge a statute that directly curtailed their attorneys' legal activities. Here, of course, Weinhaus's ARDC prosecution does not directly curtail Plaintiffs' activities, legal or otherwise. Drafting content for websites and news stories is not legal work, and Plaintiffs do not need a lawyer to engage in such functions.[6] Plaintiffs are free to engage in whatever speech they wish, and the ARDC cannot stop them.

Plaintiffs claim that Defendants are targeting them through Weinhaus for their criticism of the judiciary and sitting judges. But alleging that Weinhaus is being disciplined because of their work does not prove an injury to Plaintiffs. That Plaintiffs disagree with Defendants' actions or believe they are being treated differently from other organizations does not confer standing without an actual injury. *See Harris v. City of Zion, Lake Cnty., Ill.*, 927 F.2d 1401, 1405 (7th Cir. 1991); *Johnson v. U.S. Off. of Pers. Mgmt.*, 783 F.3d 655, 665 (7th Cir. 2015) ("The mere allegation of unequal treatment, absent some kind of actual injury, is insufficient to create standing."). Therefore, because Plaintiffs have failed to allege a legally cognizable injury that is their own, they do not have direct standing. And to the extent Plaintiffs believe they have third party standing, they have not made any allegations that Weinhaus cannot protect his own interests.[7] To the contrary, Plaintiffs admit that Weinhaus has already raised similar arguments in

---

[6] The complaint alleges that "Weinhaus' assistance was crucial in helping the organizations speak in both cases … he was only fulfilling his duties to the organizations as attorney." Doc. 59 ¶ 68. The latter statement is an argument, not a fact, and arguments in complaints are not entitled to a presumption of truth. Moreover, the argument that creating digital marketing or news content for clients is a duty of an attorney is not plausible. *See id*. ¶ 86(g) (Weinhaus admitted to the ARDC that he wears "two hats" for Plaintiffs – one as a lawyer, and one as a "publisher" of "news.").

[7] Plaintiffs argue the reverse, claiming that Weinhaus cannot adequately represent *their* interests. Doc. 65 at 11. However, this is not the relevant question for third party standing. *See Massey*, 221 F.3d at 1035 (requiring "some obstacle to the first party's ability to protect his own interest" for third-party standing). Furthermore, to the extent Plaintiffs are attempting to assert associational standing, *see* Doc. 59 ¶¶ 35-37, through which an organization has standing to assert the rights of its members under certain conditions,

his own response to the ARDC. Doc. 65 at 11. Therefore, Plaintiffs have still not shown they were injured by what Defendants did to them as opposed to what Defendants did to Weinhaus, and Plaintiffs lack standing on this basis alone.

Additionally, Plaintiffs have failed to ask the Court for relief that would redress their purported injuries. In response to the December 10 Opinion, Plaintiffs now allege that if the Court granted their request for relief, "Weinhaus would return in full capacity to the Plaintiffs and the Plaintiffs would be able to attract other attorneys and executives currently chilled from assisting [them]."[8] Doc. 59 ¶ 151. However, Plaintiffs do not address several of the other concerns addressed in the opinion, including that the Court cannot issue relief tantamount to an advisory opinion. For example, Plaintiffs request an "injunction preventing Defendants from engaging in further unconstitutional conduct by attacking attorneys who advise organizations who conduct Judicial Reform." *Id*. at 37. However, even if Defendants acted unconstitutionally in this instance, the Court cannot issue a blanket injunction against unknown conduct, involving unknown parties, and under unknown circumstances, nor can it broadly instruct Defendants to comply with the Constitution. Plaintiffs cannot obtain "an order that attempts to resolve a controversy that has not yet arisen and may never arise." *Wisconsin Right to Life, Inc. v. Paradise*, 138 F.3d 1183, 1187-88 (7th Cir. 1998). Similarly, "courts cannot issue a general injunction against all possible breaches of the law, nor should an injunction be broader than the

---

*see Milwaukee Police Ass'n v. Flynn*, 863 F.3d 636, 639 (7th Cir. 2017), these allegations are ill-developed and Plaintiffs make no effort to argue the issue or show how they meet the requirements in their response.

[8] The Court assumes for the purposes of this opinion that this statement is true, though it frankly lacks plausibility. Non-attorney executives are not bound by the Illinois Rules of Professional Conduct, so it is implausible that the ARDC's actions are chilling to them. And the first amended complaint states that Weinhaus ceased working with Plaintiffs because they did not have the resources to indemnify him, Doc. 59 ¶ 99, which suggests that his decision to stop (and presumably to restart) such work is as dependent upon Plaintiffs' funding as anything Defendants are doing.

illegal acts or practices charged or proven." *Bowles v. Montgomery Ward & Co.*, 143 F.2d 38, 42 (7th Cir. 1944).

Plaintiffs also ask the Court to declare "that [the language referenced in the ARDC complaint] is … the Plaintiffs," and enjoin Defendants "from removing protections of the Illinois Rules of Professional Conduct for Plaintiffs' attorneys for advising its clients and in no way barring the Defendants from pursuing Plaintiffs' attorneys for advising Plaintiffs illegally – such as embodied in Rule 8.4(a) Comment 1." Doc. 59 at 37. But neither of these requests would necessarily foreclose Defendants' prosecution of Weinhaus, which is the only thing that would redress Plaintiffs' purported injuries.

As the Court noted in the December 10 Opinion, the Illinois Rules of Professional Conduct prohibit attorneys not only from making false statements, but also from making misstatements through others. *See* Illinois Rule of Professional Conduct 8.4(a) (noting that a lawyer cannot "knowingly assist or induce another" to violate the Rules of Professional Conduct "or do so through the acts of another"). Therefore, whether or not the Court declared that the statements at issue belonged to Plaintiffs, the ARDC could continue to pursue Weinhaus under the theory that Plaintiffs were effectively his puppets. As for Plaintiffs' request that the Court instruct Defendants against "removing protections" of Rule 8.4(a) Comment 1, the ARDC complaint is not based upon Weinhaus giving legal advice to Plaintiffs, but is instead premised on the theory that Weinhaus was the publisher of Plaintiffs' content. In short: a declaratory judgment is not a remedy for the problems of which Plaintiffs complain.

Lastly, the first amended complaint includes additional requests for compensatory and punitive damages, but the Court cannot award damages in this case because states, state agencies, and state officials named in their official capacities may not be sued for monetary

damages under Section 1983, and Plaintiffs do not bring any individual capacity claims. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 64 (1989); *Williams v. Wisconsin*, 336 F.3d 576, 580 (7th Cir. 2003); *Ditkowsky v. Stern*, 581 F. Appx. 571 (7th Cir. 2014). As a result, because Plaintiffs have failed to establish redressability through either declarative, injunctive, or monetary relief, the suit must be dismissed for that reason as well.

**II. Abstention**

What Plaintiffs really want, of course, is not a generalized warning that the ARDC should follow its own rules or abide by the Constitution or that the speech on Plaintiffs' websites is their own speech. The only thing that will actually help Plaintiffs is putting a stop to the ARDC proceedings against Weinhaus. And for that reason, even if Plaintiffs had standing, abstention would be appropriate

As the Court explained in the December 10 Opinion, the Seventh Circuit has found abstention proper where a federal court is asked to impose upon a state suit and the plaintiff has failed to show they do not have an adequate remedy in state law, regardless of whether the specific requirements of the *Younger* doctrine are met. *SKS & Associates v. Dart*, 619 F.3d 674, 677-80 (7th Cir. 2010); *J.B. v. Woodard*, 997 F.3d 714, 722 (7th Cir. 2021) (reasoning similarly and holding that the plaintiff could not simply invoke a federal constitutional right to "compel the adjudication of claims that would inject a federal court into a contested and ongoing family court custody dispute").

In their first amended complaint, Plaintiffs allege that they have "no other avenue of redress for violations of their First Amendment rights than to invoke federal laws … to protect [them] from abrogation by state acts." Doc. 59 ¶ 12. However, other than reiterating they are not

permitted to intervene in the ARDC action, *id*. ¶ 11, Plaintiffs do not make any allegations that they are otherwise foreclosed from asserting their rights at the state level.[9]

Plaintiffs also argue the second element of *Younger*, presumably as set forth in *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982), is not met because Defendants "have no compelling state interest in the *narrowed* relief Plaintiffs seek," and the Court could grant the declaratory relief they ask for without directly managing the ARDC's disciplinary action. Doc. 65 at 12. As explained above, the Court disagrees that the declaratory relief sought would actually redress Plaintiffs' purported injuries. In any event, the second prong of *Younger* asks if the state proceedings "implicate important state interests," not whether Defendants have a compelling state interest in the relief sought. *Middlesex*, 457 U.S. at 432. It is well established that a state has "an extremely important interest in maintaining and assuring the professional conduct of [its] attorneys." *Id.* at 434. In sum, for the Court to insert itself into this state disciplinary hearing would be contrary to core principles of equity, comity, and federalism, especially when Weinhaus is raising nearly identical issues to those brought here.

There are three exceptions to *Younger* abstention, *see Pincham v. Illinois Jud. Inquiry Bd.*, 872 F.2d 1341, 1349 (7th Cir. 1989), two of which Plaintiffs argue apply in this case. First, Plaintiffs argue that the "bad faith" exception applies because Defendants brought disciplinary charges against Weinhaus in an effort to indirectly restrict Plaintiffs' speech. *See Collins v. Kendall Cnty., Ill.*, 807 F.2d 95, 98 (7th Cir. 1986) ("Bad faith or harassing prosecution … is an

[9] In fact, in Plaintiffs' response they argue that Defendants' suggestions (including moving for a supervisory order or submitting an *amicus curiae* brief) are insufficient because they do not "constitute[] participation in Weinhaus's underlying ARDC [action] and therefore are not an 'adequate opportunity' to raise or otherwise address the underlying constitutional claims." Doc. 65 at 11. But the question is whether Plaintiffs have an adequate remedy at state law, not whether Plaintiffs are permitted to intervene in the ARDC action.

exception to the *Younger* doctrine."). However, to make a showing of bad faith a plaintiff "must allege specific facts to support an inference of bad faith." *Arkebauer v. Kiley*, 985 F.2d 1351, 1359 (7th Cir. 1993). Here, Plaintiffs have not done so. The fact that the speech is not illegal, or that the ARDC encouraged Weinhaus not to make statements about sitting judges, or that during an interview the ARDC attorney responded to Weinhaus's self-serving explanations with words like "I understand" or "okay" does nothing to demonstrate bad faith with respect to Plaintiffs. Plaintiffs' argument that Defendants only decided to bring disciplinary charges after Judiciocracy resumed an investigation into bribery allegations in Cook County, Doc. 59 ¶¶ 96-98, might be compelling if there was any indication that the ARDC knew about such an investigation. But no facts are alleged from which one could reasonably infer that Weinhaus's searches of public records were known to the ARDC, or if they were, that the ARDC knew that Weinhaus was on the verge of breaking a story about judicial corruption and therefore decided in bad faith that Judiciocracy must be stopped.

Nor have Plaintiffs plausibly alleged that the "flagrantly and patently violative of express constitutional prohibitions" exception to abstention applies. For this exception to apply, a statute or provision thereof must be "flagrantly and patently violative of express constitutional prohibitions in every clause, sentence and paragraph, and in whatever manner and against whomever an effort might be made to apply it." *Younger v. Harris*, 401 U.S. 37, 53-54 (1971). The Seventh Circuit has indicated that the attorney discipline process itself does not rise to this level, *Kozel v. Robinson*, 129 F.3d 1267 (7th Cir. 1997), and Plaintiffs do not allege that the relevant Illinois Rules of Professional Conduct are unconstitutional under all circumstances. Therefore, the exception does not apply here.

## CONCLUSION

For these reasons, Defendants' motion to dismiss is granted. Plaintiffs' complaint is dismissed for lack of standing. Because Plaintiffs have not cured the deficiencies outlined in the December 10 Opinion and would not be able to do so in the future, this case is dismissed with prejudice.

Dated: May 15, 2026

APRIL M. PERRY
United States District Judge

# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS

Children of the Court & Judiciocracy LLC,

Plaintiff(s),

v.

Attorney Registration and Disciplinary Commission, Lea S. Gutierrez, & Tammy Evans,

Defendant(s).

Case No. 1:25-cv-03387
Judge April M. Perry

## JUDGMENT IN A CIVIL CASE

Judgment is hereby entered (check appropriate box):

☐ in favor of plaintiff(s)
and against defendant(s)
in the amount of $ ,

which ☐ includes pre–judgment interest.
☐ does not include pre–judgment interest.

Post-judgment interest accrues on that amount at the rate provided by law from the date of this judgment.

Plaintiff(s) shall recover costs from defendant(s).

---

☐ in favor of defendant(s)
and against plaintiff(s)

.

Defendant(s) shall recover costs from plaintiff(s).

---

☒ other: This case is dismissed with prejudice for lack of standing pursuant to the Court's Order of May 15, 2026.

---

This action was *(check one)*:

☐ tried by a jury with Judge presiding, and the jury has rendered a verdict.
☐ tried by Judge without a jury and the above decision was reached.
☒ decided by Judge April M. Perry on a motion

Date: 5/15/2026

Thomas G. Bruton, Clerk of Court

J. Capparelli, Deputy Clerk