UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

No. 26-2265

**Children of the Court**, *a non-profit corporation*, and **Judiciocracy LLC**,

*Plaintiff-Appellants*,

v.

**Attorney Registration and Disciplinary Commission**, **Lea S. Gutierrez**, and **Tammy Evans**, *in their official capacities*,

*Defendant-Appellees*.

| | |
|---|---|
| Appeal No.: | 26-2265 |
| Dist. Ct.: | N.D. Ill. – Eastern Div. |
| Civil Case: | 1:25-cv-03387-AMP-GAF |
| Dist. Judge: | Hon. April M. Perry |

**Plaintiff-Appellants Children of the Court** and **Judiciocracy LLC'[s Reply in Further Support of its Appeal**

Adam Florek
IARDC No: 6320615
N.D. Ill. Gen. Bar No.: 6320615
Florek Law, LLC
3843C E Tremont Ave.
Bronx, NY 10465
Tel: +1 (929) 229-2268
Email: aflorek@floreklc.com

## TABLE OF CONTENTS


Table of Contents ....... ii

Table of Authorities ....... iii

Introduction ....... 5

Argument ....... 7

a. Plaintiff-Appellants Have Direct Standing to Pursue Their First Amendment Claims Because They Seek To Vindicate Their Own First Amendment Rights, Not Interfere With A State Action ....... 8

1. Defendant-Appellees' Acts Directly Injured Plaintiff-Appellants, and Each Element of Article III Standing Is Satisfied ....... 8

2. Plaintiff-Appellants Seek Neither to Direct Nor to Halt Any Prosecution.. 10

3. The First Amendment Protects Against a Government's Indirect Restraints, and the ARDC's Prosecution of Weinhaus for Assisting Plaintiff-Appellants' Reform Advocacy Has Stifled Their Speech ....... 11

b. Abstention Is Unavailable Because This Case Falls Outside Younger's Three Exceptional Categories And The ARDC Is Not An Adequate Forum For Nonparties ....... 15

1. Sprint Confines Younger to Three Exceptional Categories and Forbids Treating the Middlesex Factors as an Independent Trigger ....... 16

2. Middlesex Itself Forecloses Abstention Where Plaintiff is a Nonparticipant Asserting Independent Constitutional Interests ....... 19

3. Testifying, Moving for a Supervisory Order, or Filing as an Amicus Is Not an Adequate Forum, Because None of Them Yields Declaratory, Injunctive, or Legal Relief ....... 21

c. The Hindrance Inquiry Asks Whether Weinhaus Can Obtain The Relief Plaintiff-Appellants Need — Not Whether He Can Voice A Similar Defense 24

Conclusion ....... 27

Certificate of Compliance with Fed. R. App. Pro. 32(a)(7) and 32(g) and Circuit Rule 32(c) ....... 28

Certificate of Service ....... 29

# TABLE OF AUTHORITIES

**Cases**

Bantam Books, Inc. v. Sullivan, 372 U.S. 58 (1963)................................................. 13

Brotherhood of Railroad Trainmen v. Virginia, 377 U.S. 1 (1964)...................... 11, 12

Chapman v. Oklahoma, 472 F.3d 747 (10th Cir. 2006)...................................... 16, 18

Cleveland v. ARDC,
No. 95 C 5775, 1996 U.S. Dist. LEXIS 13198 (N.D. Ill. Sep. 5, 1996)................. 18

Cohens v. Virginia, 6 Wheat. 264, 404 (1821) .......................................................... 16

Crenshaw v. Supreme Court of Indiana, 170 F.3d 725 (7th Cir. 1999)..................... 19

Del Marcelle v. Brown County Corp, 680 F.3d 887 (7th Cir. 2012)............................. 9

Forty One News, Inc. v. Cty. of Lake, 491 F.3d 662 (7th Cir. 2007).......................... 19

Garden State Bar Ass'n v. Middlesex Cnty. Ethics Comm.,
687 F.2d 801 (3d Cir. 1982)........................................................................................ 19

Garrison v. Louisiana, 379 U.S. 64 (1964)................................................................. 14

Greening v. Moran, 953 F.2d 301 (7th Cir. 1992)...................................................... 18

Hunter v. Va. State Bar, 786 F. Supp. 2d 1107 (E.D. Va. 2011)............................... 21

In re Primus, 436 U.S. 412 (1978)........................................................................ 11, 12

In re Recalled Abbott Infant Formula Prods. Liab. Litig.,
97 F.4th 525 (7th Cir. 2024)........................................................................................ 7

In re Sweports, Ltd., 476 B.R. 540 (Bankr. N.D. Ill. 2012)....................................... 25

J.B. v. Woodard, 997 F.3d 714 (7th Cir. 2021) ......................................................... 20

Lac Du Flambeau Flambeau Band v. Norton, 422 F.3d 490 (7th Cir. 2005) ............ 10

Lewert v. P.F. Chang's China Bistro, Inc., 819 F.3d 963 (7th Cir. 2016).................... 7

Linda R.S. v. Richard D., 410 U.S. 614, 619 (1973)............................................ 10, 11

Lujan v. Defs. of Wildlife, 504 U.S. 555 (1992)............................................................ 8

Middlesex Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423 (1982)....... *passim*

NAACP v. Button, 371 U.S. 415 (1963) .................................................... 6, 11, 12, 15

Nat'l Rifle Ass'n of Am. v. Vullo,
49 F.4th 700 (2d Cir. 2022), vacated and remanded, 602 U.S. 175 (2024) .......... 13

Nat'l Rifle Ass'n of Am. v. Vullo, 602 U.S. 175 (2024)..................................... 6, 13, 14

New Jersey-Philadelphia Presbytery of the Bible Presbyterian Church v. New Jersey State Board of Higher Education, 654 F.2d 868 (3d Cir. 1981)................ 19

New Orleans Pub. Serv., Inc. v. Council of New Orleans, 491 U.S. 350 (1989).. 17, 18

Pennzoil Co. v. Texaco, Inc., 481 U.S. 1 (1987) .......... 18, 23
Pugach v. Dollinger, 365 U.S. 458 (1961) .......... 18
SKS & Assoc. v. Dart, 619 F.3d 674 (7th Cir. 2010) .......... 18, 19, 20
Sprint Communications, Inc. v. Jacobs, 571 U.S. 69 (2013) .......... 15, 16, 18, 19
Steffel v. Thompson, 415 U.S. 452 (1974) .......... 19
Sterns v. Lundberg, 922 F. Supp. 164 (S.D. Ind. 1996) .......... 18, 23
Storment v. O'Malley, 938 F.2d 86 (7th Cir. 1991) .......... 18, 21
United Mine Workers v. Ill. State Bar Ass'n, 389 U.S. 217 (1967) .......... 6, 11, 12
Younger v. Harris, 401 U.S. 37 (1971) .......... *passim*

**Rules**

Ill. R. Prof'l Conduct 8.2(a) .......... 10, 25
Ill. R. Prof'l Conduct 8.4(a) .......... 20
Ill. R. Prof'l Conduct 8.4(c) .......... 10, 25
Ill. S. Ct. R. 345 .......... 22
Ill. Sup. Ct. R. 383 .......... 22

## INTRODUCTION

Defendant-Appellees misunderstand the purpose of Plaintiff-Appellants' underlying lawsuit: Children of the Court and Judiciocracy LLC are seeking declaratory and injunctive relief declaring that the speech at issue is the Plaintiff-Appellants' organizational speech, *not Weinhaus's*, and enjoining Defendants-Appellees' from future retaliatory conduct directed at Plaintiff-Appellants' attorneys for Plaintiff-Appellants' legal speech. Plainly put, they are asking the federal court to protect their own First Amendment rights because Weinhaus cannot.

As a result, of this misunderstanding, Defendants-Appellees argue that, *inter alia*, "[Plaintiff-Appellants] Lack Standing To Complain About The ARDC's Prosecutorial Discretion, When They Have No Legally Cognizable Interest In The Prosecution Of [D]r. W[ei]nhaus And Have Not Demonstrated Any Concrete Injury From Defendants' Actions" (Brief of Defendant-Appellees ("Def. Br."), p. 9) ignoring that Plaintiff-Appellants' lawsuit sought to vindicate the interference with their organizational speech; and "Abstention Is Appropriate In This Matter, To Avoid Offending The Principles Of Comity And Federalism" (Id., p. 17) either overlooking or ignoring that Plaintiff-Appellants' are not parties to any past or pending state court action.

As highlighted in Plaintiff-Appellants' opening brief and further explained below: Plaintiff-Appellants have standing because Defendants-Appellees' disciplinary prosecution of Weinhaus is not a stray consequence of regulating an unrelated third party, it is the mechanism by which the ARDC has intentionally

silenced the organizations' own constitutionally protected judicial-reform activities with plans to continue to do so. As here, they will either pretend the entities either do not exist or note that they do exist and have no speech and associational rights. Further, abstention would be an error because Plaintiff-Appellants are not now, nor have they ever been parties to any criminal prosecution, civil enforcement action, or order-enforcement proceeding – a *critical* factor in any Younger inquiry – and are not permitted to intervene in the state action. And, there is no property at stake for them otherwise to reclaim, this is about speech and associational rights being intentionally obstructed.

As a result, Plaintiff-Appellants turned to federal court to vindicate their own independent First Amendment right to free speech and free association—not to control Weinhaus's prosecution. The ARDC's selective targeting of their sole willing attorney-agent has directly and foreseeably dismantled their letter campaigns, journalistic output, and organizational operations, precisely the kind of indirect governmental suppression of associational advocacy that NAACP v. Button, 371 U.S. 415 (1963); United Mine Workers v. Ill. State Bar Ass'n, 389 U.S. 217 (1967); and Nat'l Rifle Ass'n of Am. v. Vullo, 602 U.S. 175 (2024) forbid. Accordingly, the District Court's judgment should be reversed.

## ARGUMENT

As a preliminary matter, it is well settled that "[District] Courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." In re Recalled Abbott Infant Formula Prods. Liab. Litig., 97 F.4th 525, 528 (7th Cir. 2024). On review, this Court must also "accept all material allegations of the complaint as true and construe them in favor of the complaining party." Lewert v. P.F. Chang's China Bistro, Inc., 819 F.3d 963, 966 (7th Cir. 2016).

The District Court did not apply that standard, instead it made findings and concluded that "Plaintiffs do not need an attorney to do the things that they complain about being unable to do…" and, in support, observed that "[s]ome of Chicago's most influential judicial reform organizations have non-lawyers as Executive Directors."[1] (Dkt. 68 at 6–7 & n.5) That second proposition appears nowhere in the First Amended Complaint. It is the product of the court's own extra-record investigation into what other organizations do, and it was deployed to contradict Plaintiff-Appellants' well pleaded allegations that they searched for replacement counsel and could not find any. (Dkt. 59 ¶¶ 173–74) The court likewise surmised that Plaintiff-Appellants' difficulty replacing Weinhaus was the result of a minimal operating budget rather than the ARDC's charge. (Dkt. 68 at 6–7 & n.5)

1. One of the most concerning aspects of the District Court's opinions is that judges should get to say which court reform organizations are 'influential' and what they need, highlighting the import of the instant matter.

These are quintessential factual disputes. Whether a judicial-reform non-profit and a legal-affairs publisher can function without their only willing attorney is a question for the merits, resolved on evidence, *not a question a court answers at the pleading stage by looking at other organizations' websites*. Defendant-Appellees defend that reasoning by adopting it wholesale. (Def. Br., p. 13, quoting Dkt. 68 at 8) They never explain how this finding of fact survives Lewert or Abbott's standards.

**a. Plaintiff-Appellants Have Direct Standing to Pursue Their First Amendment Claims Because They Seek To Vindicate Their Own First Amendment Rights, Not Interfere With A State Action**

Defendant-Appellees' attempt to repeatedly reframe Plaintiff-Appellants' lawsuit as something other than what it is but, these efforts are felled by face of the Defendant's own disciplinary proceeding. The speech Defendants-Appellees charges appeared on Children of the Court's website and in an ALABnews article — Plaintiff-Appellants' platforms and publications. (Dkt. 29, Ex. 1; Amended Complaint, Dkt. 59, ¶ 66) Plaintiff-Appellants are not strangers interjecting themselves into a third-party's proceeding, they are the organizations responsible for the purportedly offending, but perfectly legal speech related to judicial reform.

*1. Defendant-Appellees' Acts Directly Injured Plaintiff-Appellants, and Each Element of Article III Standing Is Satisfied*

Standing requires a concrete and particularized injury; a "causal connection between the injury and the conduct complained of[;]" and a likelihood "that the injury will be redressed by a favorable decision." Lujan v. Defs. of Wildlife, 504 U.S. 555, 560–61 (1992) (Scalia, J.) (internal citations and quotations omitted). Here, all three are present.

Plaintiff-Appellants were injured. Defendant-Appellees' conduct directly abridged their First Amendment right to speak and to associate, specifically the right to associate with an attorney who will help them *mildly* criticize or *applaud* sitting judges. The violations resulted in the collapse of their advocacy and publishing operations. Defendant-Appellees never engage this interest on its own terms; they simply assert that Plaintiff-Appellants remain "free to draft content for websites, draft news stories and engage in other speech 'and the ARDC cannot stop them.'" (Def. Br., p. 13, quoting Dkt. 68 at 8) The record indicates otherwise. The letters and journalistic news coverage of judicial misconduct investigations stopped. The story was lost.

Defendant's conduct is the cause. Defendant-Appellees do not contest traceability, and the district court did not either. Defendants-Appellees brought charges against Plaintiff-Appellants' key man for the organizations' speech, the attorney who helps the organizations speak, and as a result, Plaintiff-Appellants' speech has been silenced. Defendant-Appellees' own authority frames the question correctly: a plaintiff "needs to show how [it] was injured by what the defendants did to [it], rather than by what they didn't do to other people or what they didn't do for [it]." " (Def. Br., p. 11, quoting Del Marcelle v. Brown County Corp, 680 F.3d 887, 901 (7th Cir. 2012)). Plaintiff-Appellants complain of what Defendant-Appellees did — filed a charge premised on the entities' publications — and of the consequences that action visited on the *entities*.

The Court can provide redress. To survive a motion to dismiss "a plaintiff need only plead 'that there is a 'substantial likelihood' that the relief requested will redress the injury claimed.'" Lac Du Flambeau Flambeau Band v. Norton, 422 F.3d 490, 501 (7th Cir. 2005). The Defendants-Appellees charged Weinhaus under Rules 8.2(a) and 8.4(c), each of which requires proof that Weinhaus himself made a false statement; the complaint pleads that Plaintiff-Appellants made the relevant statements. A declaratory judgment that the speech at issue is the Plaintiff-Appellants' organizational speech — and that Weinhaus's role in producing it was as Plaintiff-Appellants' agent — would directly contradict the factual predicate of the ARDC's existing charges and provide redress.

2. *Plaintiff-Appellants Seek Neither to Direct Nor to Halt Any Prosecution*

In its Brief, Defendants-Appellees argues that "a private citizen lacks a judicially cognizable interest in the prosecution or non-prosecution of another." (Def. Br., p. 11–13, quoting Linda R.S. v. Richard D., 410 U.S. 614, 619 (1973)). But Plaintiff-Appellants are not trying to compel, direct, or interfere with a state court proceeding; Plaintiff-Appellants do not ask this Court to compel or forbid Weinhaus's prosecution, nor do they assert a derivative interest in whether Weinhaus himself is disciplined. They do not seek to direct the ARDC's charging decisions, to shield Weinhaus from discipline for genuine violations, or to bar future proceedings against him. The ARDC remains free, after such a declaration, to pursue Weinhaus for actual violations. What Plaintiff-Appellants **do** seek is a declaration about whose speech

this is — a question about *their* rights, not *his* exposure. They are free to keep prosecuting *him* as is their right and duty.

Linda R.S. itself confirms the distinction. There, the plaintiff did not assert an independent constitutional interest; instead, she claimed she was injured by the non-prosecution of her child's father. However, the Court held that this generalized interest in seeing the laws enforced against someone else was constitutionally insufficient and that the connection between prosecution and her desired remedy was merely "speculative." Linda R.S., at 618. Here the link is not speculative.

Moreover, Defendant-Appellees' proffered support gives the game away. The reliance on various cases to support the proposition that the public cannot direct a prosecution is without debate. (Def. Br., pp. 11–13) Their reliance on cases to support the argument that a member of the public cannot compel the ARDC to action is also uncontested. (Id.) However, none of the proffered support touches on the circumstance now before the Court, where a speaker whose own publications formed the evidentiary core of the charge could not vindicate their own rights related to the same. Protecting one's own speech and existential rights is not the same as siccing a prosecutor on a another or demanding non-prosecution. Neither are requested.

### 3. *The First Amendment Protects Against a Government's Indirect Restraints, and the ARDC's Prosecution of Weinhaus for Assisting Plaintiff-Appellants' Reform Advocacy Has Stifled Their Speech*

Defendants-Appellees further argues that Button, Brotherhood of Railroad Trainmen v. Virginia, 377 U.S. 1 (1964); United Mine Workers, 389 U.S. 217 (1967); and In re Primus, 436 U.S. 412 (1978) are inapplicable because those cases "involved

plaintiffs who were prohibited from engaging in activity, such that standing was not an issue." (Def. Br., p.14) That reading misunderstands their holdings.

In each of the preceding cases, the State acted through its regulatory power over lawyers, and in each, the Supreme Court held that power could not be used to sever an organization from its counsel. Button held that "the activities of the NAACP, its affiliates and legal staff... are modes of expression and association protected by the First and Fourteenth Amendments which [the state] may not prohibit... under its power to regulate the legal profession." 371 U.S. at 428–29. Trainmen held "lawyers accepting employment under [a] constitutionally protected plan have a like protection which the State cannot abridge." 377 U.S. at 8. In Re Primus recognized that an organization has no mouth of its own — it acts and litigates only through agents. 436 U.S. at 422, 427. And United Mine Workers, which addressed a state bar's effort to sever a union from its salaried attorney, plainly held that "the First Amendment would... be a hollow promise if it left government free to destroy or erode its guarantees by indirect restraints so long as no law is passed that prohibits free speech, press, petition, or assembly as such." 389 U.S. at 222.

In each of the above, the Supreme Court prohibited the state from exercising indirect restraint over an organization's First Amendment activities and indirect restraint is precisely what this record shows here. Defendant-Appellees concede that the disciplinary proceedings "have not been brought against [Plaintiff-Appellants], nor could they have been, since [Plaintiff-Appellants] are nonlawyer entities and the Rules of Professional Conduct apply only to lawyers." (Def. Br., p. 15) That concession

is fatal, not helpful. Illinois cannot regulate Plaintiff-Appellants' speech directly. The ARDC reached that speech anyway - by charging Plaintiff-Appellants' attorney through which the organizations spoke - and admitting they wanted him to stop helping Plaintiff-Appellants.

This indirect restraint is brought into even sharper focus when considering the holding of Nat'l Rifle Ass'n of Am. v. Vullo, 602 U.S. 175 (2024). In Vullo, the New York Department of Financial Services exerted pressure against regulated entities to stifle the NRA's pro-gun advocacy by threatening enforcement actions against those entities that refused to disassociate from the NRA and other Second Amendment advocacy groups. There, like here, a state actor leveraged their regulatory powers and threatened "an array of technical regulatory infractions" against any regulated entity that did not disassociate with an organization that was *non grata*. Id., at 183. However, the Supreme Court re-affirmed a principal articulated more than sixty years ago and held: "[g]overnment officials cannot attempt to coerce private parties in order to punish or suppress views that the government disfavors." Id., at 180 (citing Bantam Books, Inc. v. Sullivan, 372 U.S. 58, 67 (1963)). The Court further recognized that numerous factors can be considered when determining whether the state is making a threat.[2]

2. For example, the Second Circuit considered: "'(1) word choice and tone; (2) the existence of regulatory authority; (3) whether the speech was perceived as a threat; and, perhaps most importantly, (4) whether the speech refers to adverse consequences.'" Vullo, at 189 (quoting Nat'l Rifle Ass'n of Am. v. Vullo, 49 F.4th 700, 715 (2d Cir. 2022), vacated and remanded, 602 U.S. 175 (2024)).

Numerous allegations show that Defendant's conduct is and was threatening. At the Springfield Statement, Senior Counsel Evans framed the ARDC's interest as discouraging "articles published that make statements about sitting judges" generally, regardless of truthfulness (Dkt. 59 ¶ 87(f)) and warned Weinhaus against future affiliation with publications that comment on sitting judges: "I'd just caution you about what the content is. And what someone reading that content might imply from that content...don't. Because then you'll be back in front of us again..." (Id., ¶¶ 87(g), (h)) She acknowledged that the speech at issue appeared on the organizations' websites, not Weinhaus's personal sites, and that Children of the Court was created as a student group project while teaching at UCLA. (Id. ¶ 87(b), (c)) The timing corroborates the objective: eight and a half months of ARDC silence, followed by announcement of a formal complaint within weeks of Judiciocracy resuming its investigation into lawyer-judge bribery in Cook County. (Id., ¶¶ 96–99) Plaintiff-Appellants further alleged Defendant-Appellees' selective extension of "entity speech" protection to similar speech outside the judicial-reform context. (Id., ¶ 172) Defendant-Appellees' brief answers none of it and these allegations more than show "communication [that] is reasonably understood to be a coercive threat." Vullo, 602 U.S. at 189.

Speech critical of public officials sits at the core of the First Amendment. "The public-official rule protects the paramount public interest in a free flow of information to the people concerning public officials, their servants." Garrison v. Louisiana, 379 U.S. 64, 77 (1964). Defendant-Appellees' theory — that they may discipline the

attorney while disclaiming any effect on the client — is the exact maneuver Button foreclosed. A plaintiff whose speech has been suppressed by that maneuver has standing to say so. Judicial reform cannot reasonably exist in a context where: "the Court – and when I say 'the Court,' the [Illinois] Supreme Court, does not like when attorneys, you know, make comments about sitting judges." (Dkt. 59 ¶ 87(h)) And that same body can harass the speakers' attorney to stop their speech.[3] That is what is happening here by any reading of the Complaint under the appropriate standard.

**b. Abstention Is Unavailable Because This Case Falls Outside Younger's Three Exceptional Categories And The ARDC Is Not An Adequate Forum For Nonparties**

Defendant-Appellees devote ten pages to abstention without ever citing the Supreme Court's controlling decision. That omission is not an oversight. It is critical to Defendant-appellants' argument, because their preferred test was squarely rejected by the Supreme Court in Sprint Communications, Inc. v. Jacobs, 571 U.S. 69 (2013).

Instead, Defendant-Appellees' argument concede the two facts on which this appeal turns: 1) whether the speech at issue belongs to Plaintiff-Appellants is "a disputed issue in the ARDC proceedings," (Def. Br., p. 10), and that Defendant-Appellees cannot involve the organizations in the proceeding. (Id., p. 14) Together, those admissions mean that ownership of Plaintiff-Appellants' speech is being

3. As if by sheer coincidence, the Defendant-Appellees' clarified that they didn't like it when its sole purpose was to harass etc. under IRPC Rule 4.4. Dkt. 59 ¶ 87(h). But Defendant-Appellees realized that it was not a rule 4.4 violation and did not charge under it because the entities' speech is for the purpose of judicial reform. So, they instead harassed the attorney rather than recognize the entity speech.

decided in a forum where they can never appear to protect their rights, proving no adequate state remedy exists. Moreover, whatever this Court decides about standing or abstention, the judgment below cannot stand as entered: a dismissal for lack of subject-matter jurisdiction cannot be with prejudice. Leaving the District Court's ruling in place would allow erasure of organizational rights altogether without any cited basis and in contravention of the pleaded facts.

### 1. *Sprint Confines Younger to Three Exceptional Categories and Forbids Treating the Middlesex Factors as an Independent Trigger*

Defendant-Appellees' abstention argument is structurally simple. They recite the three Middlesex considerations — judicial proceeding, important state interest, adequate opportunity. Middlesex Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423 (1982). Then, ignoring contrary Supreme Court caselaw, declare that "[o]nce these three conditions are met, 'abstention is non-discretionary and, absent extraordinary circumstances, a district court is required to abstain.'" (Def. Br., p. 18, quoting Chapman v. Oklahoma, 472 F.3d 747, 749 (10th Cir. 2006)) Defendant-Appellees' argument is that satisfying Middlesex itself triggers the need for abstention but, that is precisely the procedure Sprint considered and found improper.

Sprint begins from the opposite premise: "[f]ederal courts, it was early and famously said, have 'no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given.' Jurisdiction existing, [the Supreme Court] has cautioned, a federal court's 'obligation' to hear and decide a case is 'virtually unflagging.'" Sprint, 571 U.S. at 77 (quoting Cohens v. Virginia, 6 Wheat. 264, 404 (1821)). A unanimous Court then confined Younger to three classes of

exceptional cases: "[f]irst, Younger preclude[s] federal intrusion into ongoing state criminal prosecutions. Second, certain civil enforcement proceedings warranted abstention. Finally, federal courts refrained from interfering with pending civil proceedings involving certain orders . . . uniquely in furtherance of the state courts' ability to perform their judicial functions." Id., at 78 (internal citations omitted, quoting New Orleans Pub. Serv., Inc. v. Council of New Orleans, 491 U.S. 350, 368 (1989)). Finally, the Court addressed the Middlesex considerations directly, holding that the "important state interest" and "adequate opportunity" considerations "were, instead, additional factors appropriately considered by the federal court before invoking Younger" — not independent triggers for abstention divorced from one of the three exceptional categories. Sprint, 571 U.S. at 71.

The sequence matters: a court reaches the Middlesex factors only after the case has been placed inside a Younger category. However, because this case fits none of the three categories, the Younger inquiry should have ended before the Court ever reached the Middlesex factors. Defendant-Appellees never attempt that threshold step. They do not claim this is a criminal prosecution. They do not claim Plaintiff-Appellants are respondents in a civil enforcement proceeding.[4] And they do not claim this case involves orders uniquely in furtherance of a state court's ability to perform its judicial functions. Unsurprisingly because, Plaintiff-Appellants are complete strangers to Defendant-Appellees' proceedings against Weinhaus.

4. Instead, Defendants-Appellees insists on the opposite, conceding that the ARDC "has not brought disciplinary proceedings against Plaintiffs and could not do so because Plaintiffs are not lawyers to whom the Illinois Rules of Professional Conduct apply." (Def. Br. 14.)

What Defendant-Appellees offer instead is *generalized* comity. They quote SKS & Assoc. v. Dart, for the proposition that a federal decision would "run contrary to the 'vital' considerations of comity and federalism and would be inconsistent with 'the traditional reluctance of a federal court to meddle in state court proceedings.'" (Def. Br., p. 18, quoting SKS, 619 F.3d 674, 679 (7th Cir. 2010)), New Orleans Pub. Serv., Inc., 491 U.S. at 364, and Pugach v. Dollinger, 365 U.S. 458, 462 (1961)) But an untethered reluctance to "meddle" is exactly what the Supreme Court has forbidden. In New Orleans Public Service — the same case Defendant-Appellees cite — the Court held abstention is "the exception, not the rule," that "only exceptional circumstances justify a federal court's refusal to decide a case in deference to the States," and that a regime permitting federal courts to decline jurisdiction whenever a state regulatory process was implicated "would make a mockery" of the exceptional-circumstances requirement. 491 U.S. at 359, 368.

Nearly every abstention authority in Defendant-Appellees' brief predates Sprint: Middlesex (1982); Pennzoil Co. v. Texaco, Inc., 481 U.S. 1 (1987); Storment v. O'Malley, 938 F.2d 86, 89 (7th Cir. 1991); Greening v. Moran, 953 F.2d 301 (7th Cir. 1992); Levin v. ARDC, 74 F.3d 763 (7th Cir. 1996); Cleveland v. ARDC, No. 95 C 5775, 1996 U.S. Dist. LEXIS 13198 (N.D. Ill. Sep. 5, 1996); Sterns v. Lundberg, 922 F. Supp. 164 (S.D. Ind. 1996); Chapman (10th Cir. 2006); and SKS (7th Cir., 2010). Defendant-Appellees brief is bereft of the Supreme Court's controlling opinion on the abstention question – Sprint. Plaintiff-Appellants placed Sprint at the center of their opening

brief and here, silence is not a rebuttal -- it is a concession. Defendant-Appellee's silence is a concession that it cannot fit this case into any category Sprint permits.[5]

### 2. *Middlesex Itself Forecloses Abstention Where Plaintiff is a Nonparticipant Asserting Independent Constitutional Interests*

Defendant-Appellees build their case on Middlesex, and argue that "[e]ven if a federal plaintiff is not a defendant in the state court proceedings, abstention is still appropriate when the principles of equity, comity, and federalism are implicated in the case." (Def. Br., p. 18, citing SKS) But they do not tell this Court what happened to the Garden State Bar Ass'n plaintiffs on remand from Middlesex.

On remand, the Third Circuit held that "abstention is improper with respect to such parties" — parties who were not participants in the underlying state disciplinary proceeding. Garden State Bar Ass'n v. Middlesex Cnty. Ethics Comm., 687 F.2d 801 (3d Cir. 1982). The governing principle is that when "nonparties to the state enforcement proceedings [] assert independent constitutional interests[, they] may advance those interests in a separate federal action." New Jersey-Philadelphia Presbytery of the Bible Presbyterian Church v. New Jersey State Board of Higher Education, 654 F.2d 868, 881 (3d Cir. 1981) (citing Steffel v. Thompson, 415 U.S. 452 (1974)).

5. Defendant-Appellees also mis-state the standard of review, asserting that "the ultimate decision itself is reviewed for abuse of discretion." (Def. Br. 17–18, citing Courthouse News Serv. v. Brown, 908 F.3d 1063, 1068 (7th Cir. 2018)) Whether Younger applies at all is a question of law, and this Court "review[s] Younger abstentions under a *de novo* standard of review." Forty One News, Inc. v. Cty. of Lake, 491 F.3d 662, 665 (7th Cir. 2007) (quoting Crenshaw v. Supreme Court of Indiana, 170 F.3d 725, 728 (7th Cir. 1999)). Defendant-Appellee itself concedes that "the underlying legal questions are subject to de novo review." (Def. Br. 18.) The threshold Sprint question is one such question of law and no deference attaches to getting it wrong.

Defendant-Appellees' brief does not cite the remand in Middlesex, Garden State Bar Ass'n's. It does not distinguish it. It does not mention it. That is a striking omission in a brief whose central authority is the Supreme Court decision that produced it — and it leaves unanswered the point that Plaintiff-Appellants are exactly the type of nonparties asserting independent constitutional interests — their own First Amendment associational and speech rights, distinct from Weinhaus's professional-conduct defense.

Further, SKS does not carry the authority Defendant-Appellees imbues it with. SKS and J.B. v. Woodard, 997 F.3d 714 (7th Cir. 2021) turned on the availability of an adequate state forum for those plaintiffs and that those plaintiffs were trying to shape the outcome and administration of ongoing state proceedings. Plaintiff-Appellants occupy neither position. They have no procedural mechanism to assert their own First Amendment claims, and they are not asking the Federal Court to supervise, accelerate, slow, or otherwise manage any state court proceedings. They seek protection against the State's use of attorney disciplinary proceedings as an indirect tool to suppress their organizational speech -- precisely the kind of constitutional injury § 1983 exists to remedy when state's processes does not. The state is free to prosecute Weinhaus and should. The organizations just want to speak and associate without those helping them suffering for the speech itself. The Defendant-Appellees have gladly proposed their own solution to prosecute Weinhaus in this structure under Ill. R. Prof'l Conduct 8.4(a). The Plaintiff-Appellants have no

dog in that fight other than rooting the Defendant-Appellees on to protect Plaintiff-Appellants rights rather than quashing them.

Defendant-Appellees' remaining authorities confirm the distinction rather than undermine it. Every one of them involves an attorney respondent contesting his own discipline. Storment addressed Illinois's interest "in maintaining and assuring the professional conduct of the attorneys it licenses." 938 F.2d at 89. Cleveland holds that "an attorney may challenge the constitutionality of ARDC disciplinary proceedings within the proceedings themselves." 1996 U.S. Dist. LEXIS 13198 at *13. Hunter v. Va. State Bar, involved an attorney who alleged in federal court that a mandatory disclaimer violated his First Amendment rights and asked federal court to enjoin a pending disciplinary hearing. 786 F. Supp. 2d 1107 (E.D. Va. 2011). Plaintiff-Appellants are not attorneys, are not respondents, and — by Defendant-Appellees' own admission — they could never be. A doctrine built for lawyers does not automatically bind a nonparty speaker whose publications the State puts at issue.

3. *Testifying, Moving for a Supervisory Order, or Filing as an Amicus Is Not an Adequate Forum, Because None of Them Yields Declaratory, Injunctive, or Legal Relief*

Defendant-Appellees' answer to the third Middlesex factor is to catalogue things Plaintiff-Appellants might theoretically do in Illinois. They argue that "Mr. Weinhaus can call Plaintiff-Appellants as witnesses on his behalf in the disciplinary case before the ARDC, provided that their testimony is competent and relevant"; that "[Plaintiff-Appellants] cite no rule that would prohibit them from attempting to raise their constitutional arguments in state court or in the attorney disciplinary

proceedings, although Illinois Supreme Court Rule 383 permits the filing of motions for supervisory order with the Supreme Court of Illinois"; and that "[Plaintiff-Appellants] could also seek leave to file an amicus curiae brief raising their constitutional arguments in support of Mr. Weinhaus." (Def. Br., p. 22–23, citing Ill. S. Ct. R. 345) They conflate three fundamentally different things — a witness, a movant, and an *amicus* — and treat the aggregate as a substitute for a forum to be heard.

None of Defendant-Appellee's proffered avenues of redress delivers what Article III requires. A witness does not litigate; it answers questions put to it, on the topics the litigant chooses, limited to what the tribunal finds "competent and relevant" to the charges against Weinhaus. (Def. Br., p. 22) Whether Plaintiff-Appellants are called at all rests with Weinhaus, whose interests are not coextensive with theirs and who has every incentive to settle or accept discipline on terms that protect his license but leave the Plaintiff-Appellants' core constitutional injury unaddressed. An *amicus* can file a brief "in support of [D]r. Weinhaus" but, by Defendant-Appellees' own description, is only advocacy for *another* party's position. An *amicus* takes no discovery, offers no evidence, and receives no judgment. A Rule 383 supervisory order is an extraordinary, wholly discretionary remedy in the original jurisdiction of the very court whose disciplinary agency is the defendant here; Defendant-Appellees do not identify a single case in which such a motion produced declaratory relief, an injunction, or damages for a nonparty speaker. Nor given the

Defendant-Appellees' admissions re-stated above, could ever provide the relief against themselves that federal court jurisdiction was designed to offer.

The lack of a palatable forum is the defect in Defendant's argument. As nonparties barred from intervention, Plaintiff-Appellants cannot present evidence on their own behalf, call witnesses, conduct discovery, or seek damages or prospective injunctive relief in the ARDC forum - remedies that exist only in this federal action. The Defendant's proceeding concerns only whether Weinhaus violated the Rules of Professional Conduct – a process it should continue; it cannot adjudicate Plaintiff-Appellants' independent First Amendment injuries, award them damages, or enjoin future conduct directed at Plaintiff-Appellants' attorneys. Defendant-Appellees confirm the point when they describe the state forum's function: "the place to litigate whether Mr. Weinhaus' statements were false, and whether he is responsible for having made them, is before the ARDC's Hearing Board." (Def. Br., p. 26) That is a forum for adjudicating Weinhaus's culpability. It is not a forum for adjudicating Plaintiff-Appellants' rights.

Defendant-Appellees also invoke a burden-shifting rule, arguing that "[a]bstention is proper 'unless state law clearly bars the interposition of the constitutional claims,'" with "[t]he burden on this point rest[ing] on the federal plaintiff[s]." (Def. Br., p. 22, quoting Sterns, 922 F. Supp. At 168–69 and Pennzoil, 481 U.S. at 14) The rule presupposes what Defendant-Appellees have not established — that Younger applies at all and, on its own terms it is satisfied: Plaintiff-Appellants alleged, and the district court's opinion does not dispute, that they "are not permitted

to intervene in nor otherwise appear in support of their Executive Director in any related state proceedings." (Dkt. 59 ¶ 11) Defendant-Appellees label that allegation "conclusory and incorrect" (Def. Br., p. 22), then rebut it by proposing that Plaintiff-Appellants appear as witnesses or amici — roles that exist precisely *because* Plaintiff-Appellants are not party to the underlying action.

Finally, the district court's framing — "the question is whether Plaintiff-Appellants have an adequate remedy at state law, not whether Plaintiff-Appellants are permitted to intervene in the ARDC action" — inverts the correct inquiry. (Dkt. No.: 68) Where intervention is barred, the absence of a mechanism to intervene is the absence of an adequate remedy; a forum in which a party cannot appear, present evidence, or obtain relief is not a forum "adequate" for Middlesex purposes. And the structural concern is not abstract: it is *state court judges* ruling on who can say what *about state court judges* prosecuted by a disciplinary body reporting *to state court judges* for a profession whose entire work-product is overseen *by state court judges*.

**c. <u>The Hindrance Inquiry Asks Whether Weinhaus Can Obtain The Relief Plaintiff-Appellants Need — Not Whether He Can Voice A Similar Defense</u>**

Defendant-Appellees' entire answer to third-party standing is that Plaintiff-Appellants "have not demonstrated such, nor could they, because Mr. Weinhaus did file an answer and affirmative defenses in his attorney disciplinary matter, raising constitutional arguments." (Def. Br., p. 16–17) That establishes Weinhaus can make an argument but says nothing about whether he can obtain a remedy for Plaintiff-Appellants. Obviously, he cannot.

Defendant-Appellees state the correct standard and then apply a different one. The test they quote requires "some obstacle to the third parties' ability to *vindicate* their own rights." (Def. Br., p. 16, quoting In re Sweports, Ltd., 476 B.R. 540, 544 n.5 (Bankr. N.D. Ill. 2012)). Vindication means relief. Defendant-Appellees substitute articulation — the mere voicing of an overlapping defense — for vindication, and never explain how the two became the same thing. The district court made the same substitution from the other direction, faulting Plaintiff-Appellants for making "no allegations that Mr. Weinhaus cannot protect his own interests." (Dkt. 68 at 8; Def. Br., p. 16) Weinhaus's own interests are not the object of the inquiry. Plaintiff-Appellants' are.

Even were Weinhaus to prevail completely, Plaintiff-Appellants will still hold nothing. An acquittal on Rules 8.2(a) and 8.4(c) establishes only that he did not knowingly or recklessly make a false statement. He cannot obtain declaratory recognition of the Plaintiff-Appellants' speech rights as such, cannot recover damages on their behalf, and cannot secure prospective injunctive relief protecting their future ability to associate with other attorneys. Those are remedies that exist only in this federal action.

Defendants-Appellees characterizes ownership of the speech as "a disputed issue in the ARDC proceedings" (Def. Br., p. 10)**,** and define the state forum's task as deciding "whether Mr. Weinhaus' statements were false, and whether he is responsible for having made them." (Def. Br., p. 26) That is an adjudication of **his**

culpability. A finding that Weinhaus is not responsible for the statements is not a holding that Plaintiff-Appellants made them, and it binds no one as to their rights.

Divergent incentives compound the problem. Weinhaus's license to practice law is at stake; Plaintiff-Appellants' speech is also at stake. Their interests are not coextensive, and as repeatedly highlighted, he has every incentive to settle or accept discipline on terms that protect his license but leave the Plaintiff-Appellants' core constitutional injury open. A respondent who accepts a reprimand ends his exposure and forecloses Plaintiff-Appellants' claim in the same stroke — with no appeal, no declaration, and no remedy for them. Defendant-Appellees cite no authority holding that a third party's ability to raise a similar defense in a proceeding that cannot award the litigant anything defeats third-party standing.

## CONCLUSION

For the reasons articulated in Plaintiff-Appellants' Opening Brief and further supported above this Court should reverse the judgment of the District Court, vacate the dismissal, and remand this matter for further proceedings because the Plaintiff-Appellants have standing to seek redress for the abrogation of their First Amendment Free Speech Rights and Abstention would be inappropriate here.

Dated: September 10, 2026

Respectfully submitted,

***/s/ Adam Florek***

Adam Florek
IARDC No: 6320615
N.D. Ill. Gen. Bar No.: 6320615
Florek Law, LLC
3843C E. Tremont Ave.
Bronx, NY 10465
Tel: +1 (929) 229-2268
Email: aflorek@floreklc.com

Antonio Valiente-Rivera
N.D. Ill. Gen. Bar No.: 12326
Torre de La Reina - Suite 203
450 Avenida de La Constitucion
San Juan, Puerto Rico 00901
Tel: (787) 782-9544
Email: lcdoavaliente@live.com

## <u>CERTIFICATE OF COMPLIANCE WITH FED. R. APP. PRO. 32(a)(7) AND 32(g) AND CIRCUIT RULE 32(c)</u>

The undersigned, counsel for the Plaintiff-Appellants, Children of the Court and Judiciocracy LLC, furnishes the following in compliance with Fed. R. App. Pro. 32(a)(7) and hereby certifies that this brief conforms to Rule 32(a)(7) for a brief produced with a proportionally spaced font, containing 5,611 words and the typeface is Century Schoolbook, 12 point.

Dated: September 10, 2026

Respectfully submitted,

*/s/ Adam Florek*

Adam Florek
IARDC No: 6320615
N.D. Ill. Gen. Bar No.: 6320615
Florek Law, LLC
3843C E Tremont Ave.
Bronx, NY 10465
Tel: +1 (929) 229-2268
Email: aflorek@florekllc.com

Antonio Valiente-Rivera
N.D. Ill. Gen. Bar No.: 12326
Torre de La Reina - Suite 203
450 Avenida de La Constitucion
San Juan, Puerto Rico 00901
Tel: (787) 782-9544
Email: lcdoavaliente@live.com

## CERTIFICATE OF SERVICE

The undersigned, counsel for the Plaintiff-Appellants, hereby certifies that on Thursday, September 10, 2026, electronic copies of this Reply Brief were filed electronically with the Circuit's CM/ECF system which electronically delivered the same to counsel for the Defendant-Appellees.

Dated: September 10, 2026

Respectfully submitted,

*/s/ Adam Florek*

Adam Florek
IARDC No: 6320615
N.D. Ill. Gen. Bar No.: 6320615
Florek Law, LLC
3843C E Tremont Ave.
Bronx, NY 10465
Tel: +1 (929) 229-2268
Email: aflorek@florekllc.com

Antonio Valiente-Rivera
N.D. Ill. Gen. Bar No.: 12326
Torre de La Reina - Suite 203
450 Avenida de La Constitucion
San Juan, Puerto Rico 00901
Tel: (787) 782-9544
Email: lcdoavaliente@live.com